[No. S008292. Nov. 30, 1989.]

WENDY LYNN SLAVKIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Theodore A. Cohen for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

OPINION

THE COURT.—We review the recommendation of the State Bar Court that petitioner Wendy Lynn Slavkin be suspended from the practice of law for three years, that the suspension order be stayed, and that she be placed on probation for five years on specified conditions including actual suspension for the first year.

These proceedings are based in part upon stipulated facts. Once again, we consider the disturbing problem of professional misconduct occurring as a result of alcohol and cocaine dependence. While we have not hesitated in recent cases to uphold disbarment recommendations for errant attorneys suffering from similar dependencies, we assess the risk to the public and profession on an individual basis.

On this record, departure from the State Bar Court's proposal would be more punitive than prophylactic. Petitioner has no prior disciplinary record in her 10-year law career, and the 2 client matters at issue arose during a brief period of time. Of concern, however, is the fact that petitioner blames her lengthy period of substance abuse upon work and life stresses that appear to be routine. Her recovery program was initiated only under

disciplinary compulsion and, even if now sincere, is still in progress. Thus, as recommended below, we will require a five-year period of probation with strict conditions, including actual suspension for the first year *and* until petitioner satisfies the probation monitor referee that she is rehabilitated and has made full restitution.

## BACKGROUND

Petitioner was admitted to the bar on November 29, 1979. As noted, she has no prior record of discipline.[1]

This proceeding was initiated by a two-count notice to show cause (notice) filed April 20, 1987, charging various violations of the Business and Professions Code and the Rules of Professional Conduct.[2]

### A. *Stipulated Facts*

As to count 1, the parties stipulated as follows: On August 2, 1985, Jerome Bleeker hired petitioner to take prompt action to evict a nonpaying tenant. Bleeker gave petitioner a $500 advance on attorney's fees. During a three-week period between August 7 and 28, Bleeker repeatedly called petitioner to ask about the case. She wilfully[3] failed to communicate with him or perform any services on his behalf. Bleeker thereafter prosecuted the unlawful detainer action on his own. On August 28, Bleeker asked petitioner to return the prepaid fee and pay him an additional $550, representing rental losses incurred by petitioner's inaction. Petitioner did not comply, and, on October 25, 1985, Bleeker obtained a small claims court judgment against her for $1,050, plus $24 in costs. No part of that judgment has been paid. This conduct was stipulated to have violated all provisions charged in count 1. (§§ 6068 [specified duties], 6103 [appropriate discipline for breach of specified duties]; rules 2-111(A)(2), (3) [withdrawal only upon notice and refund of unearned fees], 6-101(A)(2) [failure to perform services competently].)

---

[1] The State Bar notes, in passing, that petitioner was suspended for nonpayment of dues between September 29, 1986, and June 16, 1988. This fact was not mentioned in the notice, and no order reflecting such suspension or reinstatement appears in our record.

[2] All further unlabeled "section" references are to the Business and Professions Code, and all further unlabeled "rule" references are to the Rules of Professional Conduct as they existed at the time the instant misconduct occurred. This court subsequently approved comprehensive rule revisions, operative May 27, 1989.

[3] When count 1 of the stipulated facts was read into the record at the hearing, petitioner's counsel initially objected to characterization of the misconduct as "wilful." However, counsel later conceded that petitioner was indeed culpable of wilful statutory and rule violations. However, counsel urged the referee to find that petitioner's addiction-related misconduct was mitigated by the fact that she "just couldn't help herself."

As to count 2, the parties stipulated as follows: Petitioner was hired to represent Nathan Berger in a civil matter in January 1985. On September 6, 1985, while still serving as Berger's attorney, petitioner borrowed $6,500 from him to be repaid two weeks later on September 20. Berger lent the money in reliance upon petitioner's assurance that she would receive a large inheritance before the due date. Petitioner knew at all times that this statement was false, and made it solely for purposes of inducing the loan. Petitioner failed to inform Berger of his opportunity to obtain independent counsel or to obtain his written consent to the transaction. She also failed to repay the loan when due, but, as of the date of the hearing, had repaid a total of $1,000.[4] This conduct was stipulated to have violated all provisions charged in count 2. (§§ 6068, 6103, 6106 [moral turpitude and dishonesty warrant suspension or disbarment]; rule 5-101 [no business transactions with clients absent certain safeguards].)[5]

## B. *Additional Evidence Introduced at the Hearing*

The hearing was held on January 21 and 22, 1988. Petitioner testified that she began drinking in the last year of law school, and was in "trouble" with alcohol during her first year in practice. She soon began "experimenting" with cocaine after a boyfriend "introduced" her to the drug.

Petitioner explained that she became increasingly dependent upon alcohol and cocaine during the first four years of practice. She worked serially for four different law firms during this time. She voluntarily left the first and third jobs, and was fired for poor work performance from the other two. She felt "miserable" about the second job, and "liked" the third one. In the fourth job, petitioner had a "hard time" handling "pressure" to meet the monthly "billable [hours] requirement." Also during this latter job, her relationship with her boyfriend ended, her parents' house burned down, and her parents almost obtained a divorce.

Petitioner testified that in October 1984, she opened a private practice which gradually became "successful." However, she was involved in a "series" of "destructive relationships." Her alcohol and cocaine dependencies "escalated" to the point where she was deep in debt, and had ceased functioning as a professional and "as a person."

---

[4] In her reply brief in this court, petitioner insists that she also has made monthly payments of $100 each to Berger over the course of several months in 1988 and 1989. She attaches copies of purported receipts, but, since some are illegible, the total amount repaid is unclear. Pursuant to our order herein, a probation monitor referee will calculate the precise amount of money still owed to both Bleeker and Berger.

[5] An additional charge under rule 6-101(A)(2) in count 2 was stricken by the hearing referee upon the State Bar examiner's request.

Petitioner recalled that in 1985, she received but ignored a State Bar letter informing her about two client complaints. During the same year, her parents confronted her about her addictions, but she denied having any problem. Later that year, after the fraudulent loan transaction with Berger,[6] petitioner confessed her problems to her parents, and they sent her to a psychiatrist. However, she continued consuming alcohol and cocaine, became disillusioned with therapy, and eventually ended it.

Petitioner acknowledged that she was "brought face to face with [her] disease" only after receiving formal notice from the State Bar in April 1987. By this time, financial strain had compelled her to reduce her alcohol and drug intake. Her attorney in the State Bar proceedings referred her to a psychiatrist, Dr. O'Connor, in October 1987. Under protest, she heeded the advice of Dr. O'Connor and others, and admitted herself to a month-long clinical treatment program from which she was discharged on December 18, 1987.

Petitioner testified that she has been sober during the 73-day period between admission to the clinic and the disciplinary hearing. She regularly attends Alcoholics Anonymous (AA) and related meetings. She regrets the harm she has caused, and plans to repay all debts. She feels capable of practicing law in a supervised setting which does not make her feel like the "weight of the world" rests on her shoulders.

Testimony by petitioner's mother and father established that clients who knew the parents would call their home or the father's business complaining about petitioner's failure to perform legal work. The parents gave petitioner a total of $20,000 to $25,000 towards rent, employee, and insurance expenses of her solo practice, and were currently contributing to her support and treatment costs until she could begin working again. Petitioner's parents and brother testified that treatment has given her a new, positive outlook on life.

Dr. O'Connor testified as follows: Petitioner has long been emotionally burdened by familial "pressure" to be a "perfect child."[7] She was still in the hostile "denial" phase of her dependencies when first referred to him. Upon clinical discharge, she displayed a "healthy personality." During the six-week period between discharge and the disciplinary hearing, Dr. O'Connor

---

[6] Petitioner testified that she used Berger's money "to pay bills" that had remained unpaid as a "direct result" of her addictions. She was then spending anywhere from $20 to $70 a day on alcohol, and $40 to $50 a day on half a gram of cocaine.

[7] Dr. O'Connor also testified that petitioner was emotionally burdened by certain purported health problems of both parents. However, petitioner did not testify as to whether her parents' health was a factor contributing to her emotional or addictive problems.

met with petitioner weekly, but could not yet give a long-term prognosis. Petitioner's continued sobriety depends upon a one- to four-year regimen of therapy meetings, random urine testing, AA meetings, and volunteer service in the addictive community. Petitioner's current supportive family environment contributes to recovery. She is currently fit to practice law, but only in a supervised setting.

Petitioner's sponsor and coparticipant in a lawyers' alcohol recovery group testified regarding petitioner's daily attendance at meetings, and her apparent sobriety since discharge from the clinic. Petitioner also introduced into evidence letters written near the time of the hearing by three lawyers, one judge, two former clients, and two other acquaintances. These individuals attested to their faith in the sincerity of petitioner's recovery efforts and her competence as an attorney.

## C. State Bar Court Findings

The State Bar Court[8] adopted the stipulated facts. It found that, as stipulated concerning count 1, petitioner's wilful failure to perform services and respond to Bleeker's inquiries violated section 6103, and rules 2-111(A)(2) and 6-101(A)(2). Petitioner's conduct in the Bleeker matter also was found to have violated section 6068, subdivision (m) (duty to communicate with client), and rule 2-111(B)(3) (failure to withdraw when required by reason of incapacity).

The State Bar Court also found that, as stipulated concerning count 2, petitioner violated sections 6068, 6103, and 6106, and rule 5-101. It observed that petitioner's act of deceiving Berger was tantamount to a theft by false pretenses, and that petitioner failed to advise Berger of his right to independent counsel and to obtain his written consent.

---

[8] Pursuant to a decision dated October 13, 1988 (which corrected a clerical error in an earlier decision), the review department adopted the hearing panel's decision with only three changes: (1) adding a finding that petitioner wilfully violated rule 2-111(A)(2) in count 1; (2) increasing the period of actual suspension from six months to one year; and (3) requiring petitioner to make restitution to Berger in the amount of $6,500.

Our record contains a promissory note between petitioner and Berger dated September 6, 1985, and a subsequent written settlement between the parties (with Berger acting through new counsel) dated April 15, 1986. The hearing panel had refrained from recommending *any* restitution to Berger on grounds that he was a "sophisticated lender," and that the original promissory note had added a "usurious" interest payment of $1,500 to the $6,500 principal balance. (Berger operates a check-cashing company.) In the subsequent settlement agreement, petitioner agreed to repay $6,500, at a rate of 10 percent interest per annum over the course of two and one-half years.

We note that the review department, like the hearing panel, also recommended that petitioner make restitution to Jerome Bleeker in "the full amount of the small claims court judgment entered in his favor against" petitioner.

Petitioner further was found culpable of unlawful possession and use of controlled substances under Health and Safety Code sections 11350 and 11550, and that she thereby violated her duty to uphold state law in both client matters. (§ 6068, subd. (a).)

Petitioner's use of alcohol and cocaine, and her admission to treatment *after* disciplinary charges had been filed, were basically rejected as mitigating factors.[9] However, the State Bar Court perceived petitioner as "a highly intelligent, articulate, and well-motivated" person, suffering from essentially controllable "emotional problems." It found that petitioner's rehabilitative steps were entitled to substantial mitigating weight, i.e., clinical discharge with good prognosis, AA attendance, and present sobriety. To the same end, the State Bar Court emphasized petitioner's remorse, desire to make amends, and lack of prior discipline.

By a nine-to-four vote,[10] the State Bar Court recommended five years' probation on specified conditions, including one year's actual suspension. It based this proposal on the finding of moral turpitude and dishonesty (§ 6106), and upon applicable Standards for Attorney Sanctions for Professional Misconduct authorizing suspension *or* disbarment. (Rules Proc. of State Bar, div. V, stds. 2.3, 2.4 & 2.6, 2.8) (all further references to standards are to this source).

DISCUSSION

A. *Problematic Findings*

Petitioner does not challenge the sufficiency of the notice or the State Bar Court's findings of misconduct. ■ However, their validity bears on our ultimate choice of discipline. As in recent cases, we have independently reviewed the record and found certain deficiencies in the decision below. (See, e.g., *Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1096 [245 Cal.Rptr. 628, 751 P.2d 894]; *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968-969, & fn. 1 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1]; *Maltaman* v. *State Bar* (1987) 43 Cal.3d 924, 931-932 [239 Cal.Rptr. 687, 741 P.2d 185].)

■ The conclusion that petitioner violated section 6068, subdivision (m) in count 1, the Bleeker matter, cannot fairly form a basis of discipline. That particular subdivision was not added to the statute until *after* the misconduct occurred, and was not specified in either the notice or the stipulation.

---

[9] The State Bar Court suggested that an attorney's asserted need for alcohol or illicit drugs to "face the stresses" of the profession might properly be considered an "aggravating" factor. This statement appears to be an expression of general concern over the public danger inherent in attorney substance abuse, rather than a specific finding on these facts.

[10] The four dissenters viewed the recommended discipline as excessive.

(See Stats. 1986, ch. 475, § 2, p. 1773; see also *Guzzetta* v. *State Bar, supra,* 43 Cal.3d at pp. 968-969, & fn. 1.)

■ In the same count and client matter, the finding under rule 2-111(B)(3) also cannot be sustained. This provision was not specified in either the notice or the stipulation. Moreover, a finding under 2-111(B)(3)—that petitioner *failed* to withdraw when required to do so by reason of incapacity—is logically inconsistent with the finding under rule 2-111(A)(2)—that petitioner *withdrew* from employment without taking steps to avoid prejudice to Bleeker. Only the latter determination is supported by the record. As charged in the notice and explained in the stipulation, petitioner effectively abandoned Bleeker's eviction case, and caused him additional inconvenience and monetary loss.

We further find that the State Bar Court's proper conclusion that petitioner wrongfully withdrew in the Bleeker matter (rule 2-111(A)(2)) should have been accompanied by a finding that she wilfully failed to return unearned fees under rule 2-111(A)(3). A violation of the latter provision was charged in the notice, and stipulated to by the parties. We infer that the absence of such an *express* finding in the State Bar Court's decision is mere oversight. A determination that petitioner failed to return unearned fees is implicit in the State Bar Court's recommendation that petitioner pay Bleeker's small claims judgment—which included the $500 fee advance—as a condition of probation.

■ We also decline the State Bar Court's invitation to find petitioner culpable, in either client matter, of *criminal* offenses involving possession or use of controlled substances. Obviously, such violations were not charged in the notice, and their determination is not the proper subject of State Bar *disciplinary* proceedings. (See § 6065 et seq.) As a result, there is no basis for concluding that petitioner's conduct in either the Bleeker or Berger matter violated sections 6068 (specified duties) or 6103 (appropriate discipline for breach of specified duties). (See *Baker* v. *State Bar, ante,* p. 804 [263 Cal.Rptr. 798, 781 P.2d 1344].)

All other findings of misconduct in *both* client matters are clearly supported by the record. Thus, in addition to improper withdrawal and failure to return unearned fees (rule 2-111(A)(2), (3)), petitioner's conduct in the Bleeker matter involved intentional or reckless failure to perform services competently. (Rule 6-101(A)(2).) ■ As to the Berger matter, petitioner's act of deceiving Berger into "loaning" her $6,500 involved dishonesty and moral turpitude (§ 6106), and violated the restrictions placed by rule 5-101 on attorney-client business dealings.

B. *Appropriate Discipline*

■ Guided by the Standards, we exercise our independent judgment in selecting the appropriate discipline. (*Kent* v. *State Bar* (1987) 43 Cal.3d 729, 737 [239 Cal.Rptr. 77, 739 P.2d 1244].) However, the State Bar Court's recommendation is entitled to great weight. (*In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765].)

■ Although committed during a one-month period, petitioner's misconduct is serious. She breached her basic duty of loyalty by abandoning Bleeker. Such neglect, particularly where accompanied by misconduct in other client matters, warrants "substantial discipline." (*Carter* v. *State Bar, supra,* 44 Cal.3d at p. 1100; std. 2.4.) Even more troublesome is the act of fraud against Berger. Although this act did not directly involve the practice of law, petitioner was willing to take advantage of the attorney-client relationship in order to ease her personal financial strain. ■ Our prior decisions and the standards leave no doubt that a single dishonest act, resulting in substantial monetary loss to the client, may warrant suspension or disbarment, depending upon the extent to which the risk of recurrence is mitigated. (See *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656-658 [247 Cal.Rptr. 608, 754 P.2d 1104]; std. 2.3.)

■ We reject petitioner's suggestion that her use of alcohol and cocaine is, per se, a "mitigating" factor. (See *Baker* v. *State Bar, supra, ante,* at p. 818, fn. 6; see also, *Twohy* v. *State Bar* (1989) 48 Cal.3d 502, 513-514 [256 Cal.Rptr. 794, 769 P.2d 976]; *In re Demergian* (1989) 48 Cal.3d 284, 295 [256 Cal.Rptr. 392, 768 P.2d 1069]; std. 1.2(e)(iv).) Petitioner apparently began using alcohol and cocaine solely for recreational and peer-pressure reasons. (Cf. *In re Nadrich* (1988) 44 Cal.3d 271, 276 [243 Cal.Rptr. 218, 747 P.2d 1146] [drug addiction as a result of legitimate medical treatment].) During the approximate eight-year period in which her dependencies flourished, petitioner appears to have endured no unusually stressful work conditions. By her own admission, she *increased* her consumption of alcohol and cocaine even when she "liked" her work and was relatively "successful" at it. Petitioner's testimony revealed some family and personal relationship problems which, in the abstract, could be considered influential (e.g., parents' housing and marital problems, and petitioner's "destructive relationships"). However, she mentioned these events in the most detached, conclusory, and unpersuasive terms.

Also, petitioner's decision to seek medical and psychiatric treatment cannot be considered "voluntary." (Cf. *Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 205 [168 Cal.Rptr. 333, 617 P.2d 486] [admission to alcohol recovery program *before* disciplinary charges filed].) Petitioner ignored repeated

warnings that she was on the brink of personal and professional disaster, and reluctantly sought treatment only when threatened with loss of her license. While treatment under *any* circumstances is to be encouraged, its initiation in this case is not itself a substantial "mitigating" factor.

Petitioner nonetheless insists that she has established that her dependencies are now under control. Petitioner points to evidence introduced at the January 1988 hearing regarding her then 73-day period of sobriety. She also attaches to her brief *in this court* a letter written by Dr. O'Connor in December 1988, indicating that he has continued to treat petitioner in the 11 months since the hearing; that she remains "sincere" in her recovery efforts; that she is still "abstinent"; and that her prognosis is "excellent." Another letter written by an attorney at the same time states that petitioner has been working as an associate in his small firm since February 1988, and that she has been performing well.[11]

■ This court is necessarily wary of documentation extrinsic to the record of proceedings before the State Bar. (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217]; *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 682-683 [244 Cal.Rptr. 462, 749 P.2d 1317]; *In re Possino* (1984) 37 Cal.3d 163, 171, fn. omitted [207 Cal.Rptr. 543, 689 P.2d 115].) However, we will not ignore such evidence where it is the only means by which an attorney can meet the heavy burden of proving rehabilitation from a serious physical or emotional problem precipitating misconduct. (See *In re Lamb, supra,* 49 Cal.3d at pp. 247-248; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740].)

■ As several recent cases make clear, an attorney suffering from alcohol or drug dependence generally must establish, by clear and convincing evidence, that his or her addictions are "permanently under control." (*Rosenthal, supra,* 43 Cal.3d at p. 664.) Absent such a showing, this court "assume[s] that disbarment is necessary to protect the public" even where the misconduct "occurred over a relatively short period of time and involved relatively minor injury to the attorney's clients." (*Baker* v. *State Bar, supra, ante,* at p. 823; see also *Twohy* v. *State Bar, supra,* 48 Cal.3d at pp. 514-515; *In re Demergian, supra,* 48 Cal.3d at pp. 295-298; *Gary* v. *State Bar* (1988) 44 Cal.3d 820, 828-829 [244 Cal.Rptr. 482, 749 P.2d 1336].)

■ So far, petitioner's rehabilitative efforts seem to have been successful. Our record reveals an approximate 13-month period of sobriety between the time she entered the clinic and the time Dr. O'Connor updated her

---

[11] Petitioner also provides us with a handful of other favorable letters written by attorneys and acquaintances in December 1988.

prognosis. She also apparently has practiced law for at least 10 months following clinical discharge, without further complaint.

Nevertheless, we are not satisfied that, absent disciplinary incentive and close supervision, petitioner can maintain this level of progress. To deter future misconduct, suspension is warranted; to provide further protection to the public, practice may be resumed only under monitored probationary conditions.

## DISPOSITION

Accordingly, it is ordered that Wendy Lynn Slavkin be suspended from the practice of law for a period of three years from the effective date of this order; that execution of the suspension order be stayed; and that petitioner be placed on probation, with a probation monitor referee to be assigned pursuant to rules 610 and 611 of the State Bar Rules of Procedure, for a period of five years, upon the following conditions: (1) That petitioner be actually suspended from the practice of law in the State of California for the first year of probation and until she has satisfied the probation monitor referee that she (a) is fully rehabilitated, and (b) has repaid all items of restitution as follows: (1) to Jerome Bleeker, the full amount of the judgment entered in Los Angeles Small Claims Court, Case No. 564576, less any amount already paid as determined by the probation monitor referee, plus interest at the legal rate accruing on any unpaid balance from and after October 25, 1985; and (2) to Nathan Berger, $6,500, less any amount already paid as determined by the probation monitor referee, plus interest at the legal rate accruing on any unpaid balance from and after September 6, 1985;

(2) That she comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California;

(3) That she abstain from the use of alcohol, cocaine, or any other non-prescribed restricted drug, and state her compliance in any report she may be required to make by the probation monitor referee;

(4) That she submit, as reasonably required by the probation monitor referee, to periodic and random drug testing;

(5) That she become and remain active in Alcoholics Anonymous, and/or such other rehabilitative program or programs as directed by the probation monitor referee;

(6) That she file with the State Bar such other reports concerning her compliance with the conditions of probation as directed by the probation monitor referee;

(7) That she obtain psychiatric or psychological counseling from a duly licensed psychiatrist or clinical psychologist at her own expense and furnish evidence of such compliance in any report she may be required to make by the probation monitor referee; provided, however, that should such psychiatrist or psychologist determine that no counseling is necessary, petitioner may furnish a written statement to that effect as may be required by the probation monitor referee; and

(8) That she take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year from the effective date of this order.

By this order Wendy Lynn Slavkin is referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review the terms and conditions of her probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, she shall furnish such reports concerning her compliance as may be requested by the probation monitor referee. She shall cooperate fully with the probation monitor referee to enable the referee to discharge his/her duties pursuant to rule 611, Rules of Procedure of the State Bar.

It is further ordered that petitioner comply with the provisions of rule 955(a), of the California Rules of Court within 30 days of the effective date of this order, and file with the Clerk of the Supreme Court within 15 days thereafter an affidavit as provided for in paragraph (c) of that rule, showing compliance.

At the expiration of the period of probation, if she has complied with all terms of probation, the order suspending Wendy Lynn Slavkin from the practice of law for a period of three years shall be satisfied and the suspension terminated.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)