[S.F. No. 25099. Oct. 29, 1987.]

VICTOR R. LAWHORN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

1358

**COUNSEL**

Victor R. Lawhorn, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court recommended, with two members dissenting, that petitioner Victor R. Lawhorn be disbarred from the practice of law for mishandling client funds. Although petitioner was charged with and found to have committed four violations of the Rules of Professional Conduct, all arose from the same transaction between petitioner (a relatively inexperienced attorney) and his client. In these circumstances, and taking into account mitigating factors in the case, we conclude that disbarment would be excessive discipline and that petitioner should instead be placed on probation for five years with a two-year term of actual suspension.

### BACKGROUND

Petitioner was admitted to practice in this state in November 1978. This is his first and only disciplinary matter.

In September 1982, petitioner, who concentrated on the practice of immigration law, was retained by Karen Ann Gayles to represent her in a claim for damages arising from an automobile accident. A written retainer agreement provided that petitioner would receive one-third of any recovery as his fee, in addition to reimbursement of any costs advanced.

In May 1983, Gayles agreed to accept $2,500 in settlement of her claim. A draft for this amount, payable to Gayles and her husband and to petitioner as her attorney, was endorsed by the couple and given by Gayles to petitioner for deposit into his client trust account. Under the retainer agreement, petitioner was due the sum of $1,144.25. Gayles was entitled to the balance of $1,355.75.

The settlement check was deposited into petitioner's trust account on June 8, 1983. The balance in his account previously had been $5.83. The new balance of $2505.83 was thus almost entirely due to the settlement draft. Petitioner told Gayles that she would be paid within seven to ten days after the draft was deposited. She was not paid.

Gayles first contacted petitioner about the payment toward the end of July 1983. Petitioner represented to her that his wife had placed a freeze on his trust account as part of divorce proceedings between the two. He also told her that he would attempt to get the freeze lifted. The file of the divorce case reveals that no freeze was ever sought or imposed on the trust account or any other accounts, and that petitioner made no court appearances in connection with any freeze.

In fact, on the day petitioner told Gayles about the freeze on his trust account, the account was almost empty. From the time of the deposit until the day of this conversation, petitioner had made six withdrawals from the account, four by checks drawn to himself as payee and two by checks payable to others. Only a balance of $48.19 was left in the account as a result of these withdrawals, and bank service charges soon depleted the account. Petitioner testified that he was concerned his wife might attempt to place a freeze on his trust account and to protect Gayles he placed $1,100 of the withdrawn funds and enough other cash to make up the amount due her in a "stash box"—resembling a Pepsi can—in his refrigerator.

Gayles attempted on numerous occasions to reach petitioner by telephone to discuss the late payment, but was unable to speak with him personally although she left numerous messages. She finally left a message that she would file a complaint with the State Bar if she were not paid her money. The record does not reveal the date Gayles ultimately filed her complaint. Petitioner, however, was not contacted by a State Bar investigator, and evidently had no notice of the complaint, until December 1983.

On September 8, 1983, petitioner sent Gayles a money order for $500 and promised in an accompanying letter to pay her the remainder of the money due by October 1, 1983. He did not do so. On November 2, 1983, petitioner paid Gayles $950 in cash, a sum that represented the balance of the money

due her from the settlement draft plus interest and reimbursement for the 28 or so telephone calls she had made to his office.

### STATE BAR COURT PROCEEDINGS

Following an unsuccessful mandatory settlement conference in May 1985, hearings were held before a single referee in Los Angeles on October 22 and December 5, 1985. At the October hearing, testimony was taken from Gayles and petitioner. Petitioner moved for a continuance at the outset of the hearing, asserting that he had not been able to take discovery from Gayles and indicating that he might wish to call her husband to testify. After determining that petitioner had made no efforts to take discovery during the preceding months, the referee denied the motion without prejudice to renewal. At the close of the first hearing, the referee gave petitioner an opportunity to file a trial brief in which he could set forth any requests for additional discovery or testimony. Petitioner filed no brief and failed to appear at the hearing in Los Angeles on December 5, calling from his home in Vallejo to report that he had been unable to get his car started that morning and requesting a continuance. The referee denied the continuance after determining that petitioner had made no efforts to arrange alternative transportation to the hearing.

By decision filed January 23, 1986, the referee found that petitioner had: (1) knowingly made a false representation to Gayles that petitioner's wife had placed a freeze on his trust account in an attempt to conceal the fact that he had misappropriated her funds and to induce her to acquiesce in the continued withholding of her funds; (2) wilfully failed to pay Gayles the amounts due her as requested; (3) commingled his own funds with those of Gayles by failing promptly to withdraw his fees and advanced costs from the trust account; and (4) converted to his personal use the money owed to Gayles. The referee also found, in mitigation, that: (1) petitioner fully paid Gayles, although not until she had informed him that she intended to file a complaint with the State Bar; (2) petitioner was under strain due to marital difficulties; and (3) petitioner had no prior disciplinary record in his four years as an attorney. Finding that petitioner had "displayed a lack of appreciation for the seriousness of the charges, and a lack of candor and cooperation," the referee recommended that he be disbarred "pursuant to Sections 2.2 and 2.3 of the Standards for Attorney Sanctions for Professional Misconduct . . . ."

The review department adopted the findings and recommendation on July 10, 1986, two members dissenting on the ground that the degree of

discipline recommended appeared excessive to them.[1] Petitioner did not timely file a petition for review and, by our order of November 12, 1986, he was ordered disbarred effective December 12, 1986.

On December 1, 1986, petitioner filed an application for stay of the order, accompanied by a petition for review. Petitioner alleged that he had not received the review department order—sent neither to the residence address he had provided to the State Bar Court Clerk nor to his office address, as had been done with all prior papers in the case—and that our order was his first notice of the review department's action. By order of December 10, 1986, we vacated our prior order and issued a writ of review.

#### DISCUSSION

Petitioner asserts that disbarment is inappropriate on seven separate grounds. His contentions are largely irrelevant and, where relevant, are unsupported by the record.

1. *Repayment of funds as mitigating factor.*

Petitioner objects "to the finding that [his] repayment to [Gayles] did not constitute mitigation." No such finding was made. The referee specifically noted that repayment was made within five months of receipt of the settlement draft and identified this as the first of three mitigating factors. Petitioner's objection is mainly addressed to the argument of State Bar counsel that repayment was entitled to little weight because it was made in two installments. Petitioner contends that Gayles agreed to accept the installment payments. The record does not support petitioner's assertion and, in any event, petitioner's argument is irrelevant. The referee did not rely on the installment payments as affecting the weight to be given repayment as a mitigating factor. He discounted the payment only because it was made after Gayles had told petitioner that she would file a complaint with the State Bar.

---

[1] The record initially contained no information on the vote in favor of adopting the recommendation, the State Bar informing us at argument that where, as here, review is undertaken ex parte under rule 450(b), Rules of Procedure of the State Bar, because no written request for review was filed under subdivision (a) of that rule, the actual vote is not recorded. We were later advised by the State Bar that 12 members of the review department were present at the meeting, allowing us to infer that the vote was 10 to 2. We do not mean by this to suggest that the weight accorded a review department recommendation will vary with the voting percentages, but we would clearly be aided in our review of such matters in the future if we could from the record distinguish close cases from those in which there was substantial unanimity and if the record reflected whether those members of the review department dissenting from the recommendation had in view an alternative measure of discipline they deemed appropriate.

### 2. *Marital problems as mitigating factor.*

Petitioner also objects that "all the information concerning the marital problems that [he] had outlined to counsel and the investigator were unmentioned." This statement is rebutted by the record. Petitioner testified at the hearing and was questioned as to the effect his wife's filing of divorce proceedings had on him. He had full opportunity to raise his emotional state to explain his actions. The referee's decision expressly noted as a mitigating factor that "[petitioner] was under strain as a result of marital difficulties."

### 3. *Petitioner's good faith.*

Petitioner objects "to a finding that [he] did not demonstrate good faith" and accuses State Bar counsel of prejudice against him on racial and sexual grounds. The record shows no evidence of prejudice, nor was any finding made that petitioner did not demonstrate good faith. The referee found only that petitioner had "[t]hroughout the course of these proceedings, . . . displayed a lack of appreciation for the seriousness of the charges, and a lack of candor and cooperation." This finding is not without support in the record, but, as we note subsequently, the explanation may lie in petitioner's decision to act as his own advocate rather than in a failure to understand the gravity of his misconduct.

### 4. *Absence of reporter from mandatory settlement conference.*

■ Petitioner complains that no reporter was present at the mandatory settlement conference, thus depriving him of the opportunity to reach a stipulation as to offers of proof and documentary evidence under rule 406, Rules of Procedure of the State Bar. A reporter was present at petitioner's deposition, however. All necessary stipulations were reached at that time and were reflected in the transcript of that proceeding.

### 5. *Misrepresentations of State Bar counsel.*

Petitioner objects that State Bar counsel "misrepresented" to the hearing referee that no settlement had been reached and "did not represent to the court her total unwillingness to effect a settlement" of the case. There was no misrepresentation. State Bar counsel stated correctly that no settlement was reached. The settlement referee apparently had suggested a lesser discipline than State Bar counsel was willing to accept. Petitioner was free to make of this what he would. He did not object to State Bar counsel's statement to the hearing referee or make any statement himself on this

point, and there is no suggestion that the referee gave any weight to the failure to reach a settlement.

### 6. *Denial of right to cross-examine complainant.*

Petitioner also contends that he was denied his right to fully cross-examine Gayles at the October hearing, because she was allowed to return to work at noon. But petitioner was allowed to cross-examine, and, in fact, to recross-examine, Gayles at length on a variety of points. At the close of her testimony, petitioner was unable to identify any further areas of relevant inquiry. The referee excused Gayles, stating that petitioner would be allowed to recall her at a further hearing if he could demonstrate by offer of proof what would be accomplished. Petitioner never availed himself of this opportunity.

### 7. *Misconduct and error by the referee.*

■ Petitioner finally asserts that unspecified misconduct and error by the referee denied him due process. No error is evident from the record. Petitioner seems most concerned with the denial of his request for a one-day continuance of the December 5 hearing. But it appears that no purpose would have been served by continuing that hearing. Petitioner had not complied with the order to file a trial brief or otherwise advise the referee of what evidence he would wish to present at the hearing; nor had he subpoenaed any witnesses. He had been warned at the close of the October hearing to be fully prepared to go forward in December.

### DISPOSITION

■ We find no merit to petitioner's contentions, but in reviewing a State Bar recommendation of discipline, we must independently examine the record and exercise our judgment as to the appropriate punishment. (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 132 [207 Cal.Rptr. 302, 688 P.2d 911]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82].) ■ It is clear that petitioner violated the standards of conduct for a member of the bar and rule 8-101 of the Rules of Professional Conduct by commingling his funds with those of his client (*Jackson* v. *State Bar* (1975) 15 Cal.3d 372, 382 [124 Cal.Rptr. 185, 540 P.2d 25]), allowing his trust account balance to decline to zero while funds were still owing to his client (*Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 474 [169 Cal.Rptr. 581, 619 P.2d 1005]), withdrawing client funds from his trust account and keeping them at his home (see *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 917-918 [101 Cal.Rptr. 369, 495 P.2d 1289]; *Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 792 [51 Cal.Rptr. 825, 415 P.2d 521]), and writing a check for an office debt

from the trust account (*Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 22-23 [184 Cal.Rptr. 720, 648 P.2d 942]). At argument before us, petitioner conceded as much. The question remaining is the appropriate discipline.

■■ The misappropriation of funds held in trust is a serious violation, warranting disbarment in the absence of mitigating circumstances. (See *Tarver, supra,* 37 Cal.3d at p. 133.) Disbarment is also suggested by the new Standards for Attorney Sanctions for Professional Misconduct (hereafter Standards), applicable to matters in which, as here, the hearing panel decision was filed on or after January 1, 1986. These guidelines are not binding on us (see *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]), but we have often stressed that the review department's recommendation is entitled to great weight (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148]), and we will not reject a recommendation arising from application of the Standards unless we have grave doubts as to the propriety of the recommended discipline. This is such a case.

■ Petitioner was, at the time of the offense, a relatively inexperienced attorney. Although his lack of a prior disciplinary record therefore counts for little (*In re Bloom* (1977) 19 Cal.3d 175, 179 [137 Cal.Rptr. 168, 561 P.2d 258]), his inexperience—when coupled with his concerns over his pending divorce and his fears, groundless though they were, that his wife might attempt to freeze his trust account—explains, although it does not excuse, his failure to take steps to avoid commingling his own funds with those owed his client.

Petitioner did repay his client in full and, unasked, included interest on the funds. Although the payment was made after Gayles had told him she would file a complaint, the payment preceded any formal notice that a complaint *had* been filed and any contact from the State Bar. ■ Restitution does not absolve petitioner of the original misappropriation (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 13 [206 Cal.Rptr. 373, 686 P.2d 1177]), but it is not entirely accurate of the State Bar to characterize the restitution as having been made "merely as a matter of expediency and under pressure" and on that ground to accord it little weight. Our decisions declining to give credit for restitution on such reasoning have generally involved restitution made after disciplinary proceedings had commenced. (See *Warner, supra,* 34 Cal.3d at p. 47; *Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 195 [181 Cal.Rptr. 903, 643 P.2d 486]; *In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651]; *Resner* v. *State Bar* (1960) 53 Cal.2d 605, 614 [2 Cal.Rptr. 461, 349 P.2d 67].) Restitution made voluntarily and before the commencement of disciplinary proceedings is entitled to consideration as a mitigating factor. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 458 [224

Cal.Rptr. 101, 714 P.2d 1239].) Petitioner is somewhere between these two extremes.

In reviewing the evidence, we are to resolve all reasonable doubts in favor of the attorney. (*Alberton, supra,* 37 Cal.3d at p. 11.) Here, petitioner's payments in restitution were made by money order and in cash, and it is not implausible that the funds due Gayles, which petitioner had withdrawn from his trust account, remained in the "stash box" in his refrigerator throughout and that he did not in fact use them for his personal needs or intend to deprive his client of the funds permanently. Petitioner may be foolish and was definitely wrong in proceeding as he did, but we are not convinced that he is venal. Although evil intent is not required for a finding of wilful misappropriation (*Murray* v. *State Bar* (1985) 40 Cal.3d 575, 581-582 [220 Cal.Rptr. 677, 709 P.2d 480]), we have recognized that not every misappropriation which is technically wilful is equally culpable. (See *Waysman, supra,* 41 Cal.3d at p. 459.)

Finally, we note that the record suggests far more than it reveals. Petitioner initially cooperated with the State Bar investigation, disclosing the facts of his marital difficulties and revealing that he had sought psychiatric counseling during the period of the events giving rise to this case. On two separate occasions, as he was apprised that the disciplinary matter was progressing, he voluntarily ceased practicing to avoid the possible prejudice that interrupted representation might cause new clients. He apparently believed, following the mandatory settlement conference, that a stipulated resolution of the matter was likely and his apparent lack of candor and cooperation before the hearing referee seems largely attributable to his appearing both as the respondent and as the advocate for his position. Although we normally will not consider evidence that was not presented to the State Bar (*Martin* v. *State Bar* (1978) 20 Cal.3d 717, 722-723 [144 Cal.Rptr. 214, 575 P.2d 757]), we are concerned that significant factors may not have been brought to light and that petitioner's demeanor may have been misinterpreted.

We do not condone petitioner's conduct, but we stress that he comes before us for a determination whether a single instance of mishandling $1,355.75 in client funds merits disbarment. Although he was charged with and found to have committed four violations, all arose from the one transaction. In our prior decisions, only the most serious instances of repeated misconduct and multiple instances of misappropriation have warranted actual suspension, much less disbarment. (See, e.g., *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586, 593 [220 Cal.Rptr. 842, 709 P.2d 861]; *Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 797 [205 Cal.Rptr. 834, 685 P.2d 1185]; *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 132 [192 Cal.Rptr. 866, 665 P.2d

956]; *Warner, supra,* 34 Cal.3d at p. 49; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253].) A year of actual suspension, if not less, has been more commonly the discipline imposed in our published decisions involving but a single instance of misappropriation. (See *Murray, supra,* 40 Cal.3d at p. 585; *Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350 [113 Cal.Rptr. 371, 521 P.2d 107]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].)

We doubt that disbarment would have been considered here absent application of the Standards. Under standard 2.2(a), wilful misappropriation of funds requires disbarment unless the amount in question is "insignificantly small" or strong mitigating factors exist, in which event at least a year of actual suspension is required.[2] Under subdivision (b) of standard 2.2, simple commingling requires at least a three-month actual suspension.[3] And under standard 2.3, acts of dishonesty or the concealing of a material fact may result in suspension or disbarment, depending on the circumstances and the extent to which the client is harmed.[4] We cannot term the amount at issue here insignificant, but the mitigating factors are compelling and the harm to the client was ameliorated by the fact that petitioner made full restitution and of his own accord repaid the client for the phone calls she had made to him and added interest to the amount due her. It bears repeating that we are dealing here with but a single instance of misconduct, technically wilful but founded in negligence and inexperience. The Standards recognize different degrees of culpability for superficially similar conduct. We conclude that the case should be treated as one falling between wilful misappropriation and simple commingling.

Accordingly, we order that petitioner be suspended from the practice of law for the period of five years, that execution of the order of suspension be

[2] Subdivision (a) of standard 2.2 reads in full: "Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed. In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances."

[3] Subdivision (b) of standard 2.2 reads in full: "Culpability of a member of commingling of entrusted funds or property with personal property or the commission of another violation of rule 8-101, Rules of Professional Conduct, none of which offenses result in the wilful misappropriation of entrusted funds or property shall result in at least a three month actual suspension from the practice of law, irrespective of mitigating circumstances."

[4] Standard 2.3 reads in full: "Culpability of a member of an act of moral turpitude, fraud, or intentional dishonesty toward a court, client or another person or of concealment of a material fact to a court, client or another person shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."

stayed, and that petitioner be placed on probation for the period of five years upon the following conditions:

1. Petitioner shall be actually suspended from the practice of law in the State of California for the first two years of the period of probation;

2. During the period of probation, he shall comply with the provisions of the State Bar Act and the Rules of Professional Conduct of the State Bar of California;

3. Petitioner shall report in writing to the Office of the Clerk, State Bar Court, Los Angeles, on a quarterly basis, certifying by affidavit or under penalty of perjury that he has complied with paragraph 2 of this order during the period covered by the report;

4. During the period of probation, petitioner shall maintain with the Office of the Clerk, State Bar Court, Los Angeles, his current office or other address for State Bar purposes and his residence address;

5. Except to the extent prohibited by the attorney-client privilege or the privilege against self-incrimination, petitioner shall answer fully, promptly and truthfully any inquiry directed to him personally or in writing by the Presiding Referee of the State Bar Court or the designee of the presiding referee relating to whether petitioner is complying or has complied with these terms of probation; and

6. Petitioner is referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of his probation, petitioner shall furnish any reports concerning his compliance that may be required by the probation monitor referee and shall cooperate fully with the probation monitor referee to facilitate the discharge of the referee's duties as identified in rule 611, Rules of Procedure of the State Bar.

It is further ordered that, during the period of his actual suspension from the practice of law, petitioner take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

Petitioner is ordered to comply with rule 955 of the California Rules of Court and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order.

This order is effective 30 days after the filing of this opinion.