[No. S012023. July 12, 1990.]

LISA MARGARET HOWARD, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

Counsel

Theodore A. Cohen for Petitioner.

Diane C. Yu, Richard J. Zanassi and Major Williams, Jr., for Respondent.

OPINION

THE COURT.—Petitioner Lisa Margaret Howard, an attorney licensed to practice in this state, appropriated for her personal use approximately $1,300 in personal injury settlement funds belonging to her client. Recognizing petitioner's continuing recovery from alcohol and drug addiction, the Review Department of the State Bar Court recommended the minimum penalty prescribed by the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V; all further references to standards are to this source) for wilful misappropriation of entrusted funds: a one-year actual suspension. (Std. 2.2(a).) Petitioner challenges the one-year suspension, urging that a three-month suspension proposed by the

State Bar referee who initially heard her case is sufficient to protect the public, the courts, and the legal profession.[1]

 Upon our independent review of the record, we have concluded that an actual suspension of six months is sufficient discipline in petitioner's case. Petitioner committed a single act of misappropriation involving a relatively small sum. She made restitution. She has made a substantial showing in mitigation by demonstrating an apparently successful recovery from chemical dependency problems that have plagued most of her adult life. Charges were not brought against petitioner until nearly three years after the misappropriation and restitution and her rehabilitation. We believe that a six-month suspension is adequate to protect the public and the profession in these circumstances.

## I. FACTS, FINDINGS, AND CONCLUSIONS

Petitioner stipulated to the findings of fact and conclusions of law made by the referee. The following is taken from her stipulation, the documents attached to it, and other undisputed evidence in the record before the State Bar Court:

Petitioner was admitted to practice in 1982. Around July 1984, client Susan Marsh consulted petitioner about a claim for personal injuries suffered by the client in an accident. Petitioner and Marsh signed a retainer agreement establishing a contingent fee arrangement and authorizing petitioner to sign Marsh's name to any paper pertaining to the case, including a settlement check.[2] Marsh expressed a desire to settle the case without litigation. An experienced paralegal associated with petitioner conducted settlement negotiations under her supervision. Around February 1985, the case was settled for $3,500.

The settlement check was made jointly payable to petitioner and Marsh. Using the authority vested in her by the retainer agreement, petitioner then endorsed Marsh's name on the check as well as her own. She paid $1,000 to the law office with which she was associated for medical expenses it had advanced on the client's behalf and deposited the balance of $2,500 into her

---

[1] Petitioner's case was heard by a single referee acting as a hearing panel. (Rules Proc. of State Bar, rule 558(a).) The referee's recommendation was then reviewed and revised by the Review Department of the State Bar Court. (*Id.*, rules 450-452.) For the sake of clarity, this opinion will refer to the referee and the review department.

[2] At the time petitioner consulted with the client and they executed the retainer agreement, petitioner was associated with a firm practicing as a law corporation. Although the retainer agreement was signed by petitioner on behalf of that firm, both the firm and petitioner considered the case to belong solely to her.

personal bank account. She then spent this money for personal purposes. Marsh received none of the settlement proceeds.

Petitioner left the law office where she was working about a week after she took the settlement funds. She was unemployed from March 1 through July 1985. During this time, Marsh called the law office on several occasions to find out why she had not yet received her share of the settlement. In late April 1985, petitioner contacted Marsh by phone and Marsh demanded her share of the settlement money. Petitioner apologized for the delay and told Marsh that she would make sure that Marsh received her money. In October 1985, petitioner was served with a municipal court complaint filed on Marsh's behalf by Attorney Eric Seuthe. On receipt of the summons and complaint, petitioner called Seuthe, admitted she owed the money, and offered to pay it immediately along with any attorney fees and costs incurred by Marsh in bringing the lawsuit. Seuthe responded by demanding payment of $5,000 and a stipulated judgment from petitioner. Petitioner countered with a letter to Seuthe dated November 6, 1985, tendering a cashier's check payable to the client in the amount of $1,361.34, which she calculated to be the amount of the client's share of the settlement.

The State Bar brought charges against petitioner in a notice to show cause filed on March 31, 1988. Based on petitioner's admissions in the stipulation, the referee concluded she had violated the Rules of Professional Conduct and the State Bar Act by wilfully misappropriating client funds and failing to communicate with her client. (Rules Prof. Conduct, former rule 8-101 (new Rules of Professional Conduct became operative on May 27, 1989); Bus. & Prof. Code, §§ 6068, subd. (a), 6103.) He also concluded petitioner's conduct constituted moral turpitude under Business and Professions Code section 6106.

In mitigation, petitioner offered evidence that: (1) she was admitted to the bar in 1982 and had no prior record of discipline; (2) she had made complete restitution to her client; and (3) she was a victim of alcohol and chemical dependency resulting from psychological problems beginning in childhood. Petitioner had begun drinking while a teenager and had abused drugs and alcohol virtually all of her adult life. She is the child of alcoholics who deserted her in childhood. She experienced severe emotional distress from the unexpected death in 1984 of the grandmother who raised her and a series of broken relationships with others. She "bottomed out" in 1986 and received help from Alcoholics Anonymous (AA) and Cocaine Anonymous. She has remained an active participant in AA and The Other Bar, assisting others who suffer from chemical dependency. Petitioner had not used alcohol or drugs between 1986 and the time of her hearing before the referee in

late 1988, approximately two and one-half years.[3] The referee found petitioner's evidence compelling and concluded her conduct had resulted from alcoholism. He noted petitioner had performed well as a lawyer since 1986 when she stopped drinking and using drugs. He credited expert testimony presented by petitioner to the effect that she fell in the highest percentile of those whose recovery programs were likely to be successful, particularly since she had been sober for more than two years. He concluded that petitioner's chemical dependency was well under control and predicted that, under appropriate supervision, it would continue to be so. He recommended a three-year suspension with five years of probation and three months of actual suspension.

The review department adopted the findings and conclusions of the referee, but recommended petitioner's period of actual suspension be increased to one year in accordance with the minimum discipline prescribed by standard 2.2(a) for wilful misappropriation of client funds. Ten reviewing members voted for the recommendation; two dissented because they felt the penalty too lenient and favored disbarment; and two dissented because they felt the penalty too harsh and favored the referee's recommendation of three months' actual suspension. One of the members voting with the majority stated that he would have adopted the referee's recommendation but for the mandatory language of the standard.[4]

## II. DISCUSSION

Consistent with her stipulation, petitioner challenges neither the findings of fact nor the conclusions of law of the State Bar Court. She asserts only that the recommended discipline—one year of actual suspension for wilful misappropriation of client funds—is excessive.

■ In attorney discipline matters, we exercise our independent judgment in determining appropriate discipline. (*Gordon* v. *State Bar* (1982) 31

---

[3] Shortly before oral argument in this court, petitioner submitted a request for leave to present additional evidence consisting of various letters and other documents purporting to show her continued sobriety and service to the legal profession. The State Bar has objected to our consideration of these documents that contain hearsay and have not been subjected to the scrutiny of the adversary process. We will sustain the State Bar's objection and decline to consider the documents. Since we have no way of ascertaining the accuracy and weighing the credibility of petitioner's submission, we cannot reasonably rely upon it in considering her case. Unlike other cases where we have given limited consideration to such evidence, here it is not "the only means" by which petitioner can meet her burden of showing rehabilitation. (*In re Billings* (1990) 50 Cal.3d 358, 367 [267 Cal.Rptr. 319, 787 P.2d 617]; *Slavkin* v. *State Bar* (1989) 49 Cal.3d 894, 905 [264 Cal.Rptr. 131, 782 P.2d 270].) Petitioner was able to present her case on this issue at the hearing before the referee.

[4] Another referee who dissented felt there was no room for intermediate options in cases like petitioner's. Eschewing a one-year suspension, he suggested that petitioner's conduct should either be excused because of substance abuse or penalized more severely.

Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137].) But we accord great weight to the recommendation of the review department (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911]), and petitioner bears the burden of proving the recommended discipline erroneous or unlawful (*In re Vaughan* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651]).[5] For the reasons stated below, we conclude petitioner met that burden to the extent of justifying a shorter period of actual suspension.

■ Our paramount concern in discipline cases is protection of the public, the courts, and the integrity of the legal profession. (*Tarver* v. *State Bar, supra,* 37 Cal.3d at p. 133.) Addressing that concern, standard 2.2(a) provides: "Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling circumstances clearly predominate shall disbarment not be imposed. In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances."

■ The wilful misappropriation of client funds is theft. (See, e.g., Pen. Code, §§ 484, 503.) It is not a mere technical lapse, but a serious breach of duties of ancient vintage that are indispensable to communal life. (See, e.g., Davitt, The Basic Values in Law (1968) p. 87 ["All societies . . . disapprove theft."].) In a society where the use of a lawyer is often essential to vindicate rights and redress injury, clients are compelled to entrust their claims, money, and property to the custody and control of lawyers. In exchange for their privileged positions, lawyers are rightly expected to exercise extraordinary care and fidelity in dealing with money and property belonging to their clients. (Rules Prof. Conduct, rule 4-100.) Thus, taking a client's money is not only a violation of the moral and legal standards applicable to all individuals in society, it is one of the most serious breaches of professional trust that a lawyer can commit. As we said in *Gordon* v. *State Bar, supra,* 31 Cal.3d 748, 757: "Misappropriation of a client's settlement proceeds 'is a most grievous breach of professional ethics and morality, and such conduct is certain to endanger the confidence of the public in the legal profession. [Citations.] The usual discipline imposed for such a breach is disbarment, in the absence of strong mitigating circumstances. [Citations.]' "

■ But we are not bound to follow the standards in talismanic fashion. As the final and independent arbiter of attorney discipline, we are permitted

---

[5] We have also frequently noted that the review department's proposal of discipline is to be accorded greater weight than that of the hearing panel or referee. (*Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 682 [244 Cal.Rptr. 462, 749 P.2d 1317]; *Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 693-694 [238 Cal.Rptr. 774, 739 P.2d 134].)

to temper the letter of the law with considerations peculiar to the offense and the offender. (*In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765]; *Lawhorn v. State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].)

Petitioner emphasizes several factors in mitigation of her misconduct. ■ Initially, petitioner points to the absence of any prior disciplinary record. (Std. 1.2(e)(i).) But petitioner was admitted to the bar in 1982 and had been in practice for barely three years at the time of this incident. A "blemish-free record of . . . relatively short duration is entitled to little weight in mitigation." (*In re Demergian* (1989) 48 Cal.3d 284, 294 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Rosenthal v. State Bar* (1987) 43 Cal.3d 658, 664 [238 Cal.Rptr. 394, 738 P.2d 740]; *Smith v. State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].)

■ Petitioner also refers to her attempts to restore to her client the money she had taken. (Std. 1.2(e)(vii).) While petitioner's tender of restitution is entitled to some weight, we note that she first tendered restitution five months after promising her client she would do so and then only after being served with a lawsuit. Just as restitution after disciplinary proceedings have begun is entitled to little weight in mitigation of discipline (*Hipolito v. State Bar* (1989) 48 Cal.3d 621, 628 [257 Cal.Rptr. 331, 770 P.2d 743]; *Lawhorn, supra*, 43 Cal.3d 1357, 1366), we do not give restitution under compulsion of a lawsuit substantial weight in mitigation. Belated action, motivated by fear of legal sanctions, cannot be reckoned as virtue.

■ Finally and most critically, petitioner urges that her misconduct was the result of chemical dependency stemming from acute emotional problems reaching back into childhood. She claims that her alcohol and cocaine addiction is now under control. Petitioner supports her claims with extensive expert and lay testimony as to her rehabilitation. We have recognized that: "When evidence of alcohol abuse at the time of an attorney's professional misconduct is coupled with evidence that the abuse was addictive in nature and causally contributed to the misconduct, and when the attorney demonstrates a meaningful and sustained period of successful rehabilitation, such evidence should be considered as a factor in mitigation of disciplinary sanctions." (*In re Billings, supra*, 50 Cal.3d 358, 367.) But a heavy burden remains on petitioner to demonstrate the kind of totally effective rehabilitation that would justify relief from or substantial reduction of discipline. (*Baker v. State Bar* (1989) 49 Cal.3d 804, 823 [263 Cal.Rptr. 798, 781 P.2d 1344], quoting from *Twohy v. State Bar* (1989) 48 Cal.3d 502, 514 [256 Cal.Rptr. 794, 769 P.2d 976].)

■ We hold that petitioner has justified a limitation of her period of actual suspension to six months. At age 36, she has had lifelong and deep-

seated psychological problems that have made her dependent on drugs and alcohol for most of her adult life. The record demonstrates that she had been abstinent from drugs and alcohol for two and one-half years at the time of her hearing before the referee and had been performing well as an attorney. Although her misconduct was serious, it consisted of a single incident and a relatively small sum of money. Through no fault of hers, we are deciding her case approximately four years after petitioner's rehabilitation from the drug and alcohol addiction that the bar found to be the cause of her misconduct.

Although we have decided to reduce the period of actual suspension in petitioner's case to six months, we deny her request for a three-month suspension as recommended by the referee. Petitioner's struggle with addiction and dependency is worthy of commendation. She shares with many others the tragic consequences of these conditions in a society that continues to be rife with drug and alcohol abuse. But petitioner is a lawyer and has dedicated herself to a calling that requires "the maintenance of high professional standards . . . and the preservation of public confidence in the legal profession." (Std. 1.3.) In our view, public confidence in the legal profession would be undermined if wilful misappropriation were greeted with lesser discipline. Substantial discipline is necessary to ensure continuing public faith in the fidelity of lawyers and in the practice of law as a vital service to clients and community.

## III. DISPOSITION

For the reasons stated above, we fix the period of petitioner's actual suspension from the practice of law at six months.

Except for the period of actual suspension, the review department adopted the findings and conclusions of the referee and purported to adopt his recommended discipline. However, apparently through inadvertence, the review department's recommendation does not include conditions related to use of controlled substances. The referee's findings, which are not contested here, include specific statements that petitioner used illegal drugs, including LSD, amphetamines, and cocaine, and that petitioner's misconduct took place during a period when she was drinking heavily *and* using illegal drugs. Therefore, we deem it necessary to modify the review department's proposed discipline to include conditions governing her abuse of controlled substances as well as alcohol. We also include other modifications to enhance the comprehensiveness and clarity of the order. In view of these modifications, we will set out our order in full.

It is hereby ordered as follows:

1. Petitioner Lisa Margaret Howard shall be suspended from the practice of law for three years.

2. Execution of petitioner's suspension shall be stayed, and petitioner shall be placed on probation for a period of five years on the conditions stated in this order.

3. During the first six months of her period of probation, petitioner shall be actually suspended from the practice of law.

4. During her probation, petitioner shall comply with the provisions of the State Bar Act and the Rules of Professional Conduct of the State Bar.

5. During her probation, petitioner shall file with the State Bar a quarterly report in writing on or before January 10, April 10, July 10 and October 10 in each year of probation. In each quarterly report, petitioner shall recite that it covers the preceding quarter, or applicable portion thereof, and shall certify by affidavit or declaration under penalty of perjury the following:

 a. In the first such report, that since the effective date of her probation, she has complied with all provisions of the State Bar Act and the Rules of Professional Conduct and with the conditions of her probation;

 b. In each subsequent report, that she has so complied during the relevant period; and

 c. In a final report covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph, that she has so complied during that portion of the period.

6. During the period of her probation, petitioner shall abstain completely from the use of alcohol and controlled substances (other than those prescribed for her by a physician) and shall certify that she has done so in any report that she is required to make under these conditions of probation.

7. During the period of her probation, petitioner shall participate in the State Bar's Program on Alcohol Abuse and the State Bar Alcohol Abuse Consultant shall report in writing to the Office of the Clerk, State Bar Court, Los Angeles, petitioner's compliance or noncompliance with each of the terms of said program at the time that any of petitioner's reports as required by these conditions of probations are due, provided that the consultant shall immediately so report any failure by petitioner to comply with any term or condition of probation.

8. Petitioner shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review each term and condition of her probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms and conditions of probation. During the period of probation, petitioner shall furnish such reports concerning her compliance as may be requested by the probation monitor referee. Petitioner shall cooperate fully with the probation monitor referee in order to enable that person to comply with his or her duties pursuant to rule 611, Rules of Procedure of the State Bar.

9. During the period of probation, petitioner shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, her current office or other address for State Bar purposes and all information required by that section. Petitioner shall report to the membership records office of the State Bar all changes of information as prescribed by section 6002.1.

10. Except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, petitioner shall answer fully, promptly, and truthfully to the presiding referee of the State Bar Court, to his designee, or to any probation monitor referee assigned under these conditions of probation at her office or at an office of the State Bar (provided, however, that nothing herein shall prohibit petitioner and the presiding referee, designee, or probation monitor referee, from fixing another place by agreement), any inquiry or inquiries directed to her personally or in writing by the presiding referee, designee, or probation monitor referee, relating to whether petitioner is complying or has complied with any term or condition of probation.

11. The period of probation shall commence upon the date on which the decision of this court becomes final.

12. At the expiration of the period of probation, if petitioner has complied with all terms and conditions of probation, the order of suspension for three years shall be deemed satisfied, and her suspension and probation shall be terminated.

13. Within one year from the effective date of this order, petitioner shall take, and successfully complete, the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].)

14. Petitioner shall comply with rule 955 of the California Rules of Court as follows: petitioner shall comply with subdivision (a) of that rule

within 30 days of the effective date of this order and shall file the affidavit required by subdivision (c) of that rule within 40 days of the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)