[No. S014623. Apr. 29, 1991.]

PATRICK B. KELLY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

512

**COUNSEL**

Morris Sankary for Petitioner.

Diane C. Yu, Richard J. Zanassi, Ann M. Finneran, Starr Babcock, Howard Wistrich and Sandra Larson for Respondent.

## OPINION

**THE COURT.**—The Review Department of the State Bar Court (review department) has recommended that petitioner Patrick B. Kelly be suspended from the practice of law in California for three years, that execution of the suspension order be stayed, and that he be placed on probation for three years upon conditions that include actual suspension from the practice of law for one year.

The recommendation is based on the review department's findings that in one matter petitioner failed to deposit moneys received from a client into his trust account and commingled funds; and that in a second matter petitioner willfully failed to deliver to a client funds to which the client was entitled, and willfully misappropriated those funds.

Petitioner contends that the findings are not supported by the evidence, and that the recommended discipline is excessive. We conclude that the evidence supports the findings, but that the review department's recommendation of a one-year actual suspension is excessive under the circumstances. The hearing panel's recommendation of a 120-day actual suspension is adequate to serve the purposes of professional discipline and is therefore the discipline we impose.

### BACKGROUND

Petitioner was admitted to the practice of law in California in June 1973. He has no prior record of discipline. The present disciplinary proceeding arose out of two separate incidents involving two clients.

1. *The Northway Matter*

In 1986, petitioner represented Northway, who was a defendant in a property damage action. As part of a settlement reached in June 1986, Northway agreed to pay plaintiff Peightel $2,000. Later that month, Northway gave petitioner a check for $2,000 to satisfy the settlement. Petitioner deposited the check in his general account rather than in his client trust account. He then made out a check for $2,000 payable to Peightel's counsel Schaefer and drawn on petitioner's client trust account. Schaefer deposited the check, but it was returned because of insufficient funds.

After Schaefer had contacted petitioner, petitioner gave him a check for $2,002.50[1] drawn on petitioner's general account. This check too was returned for insufficient funds. In mid-August 1986, petitioner gave Schaefer a cashier's check for $2,002.50. Schaefer filed a complaint with the State Bar.

When these transactions occurred, petitioner was in the process of moving his office from Vista to Escondido and changing bank branches. Also, petitioner's secretary of six years, who handled his banking, left his employ. As an apparent result of his secretary's departure, petitioner changed the method of handling his accounts; payment was stopped on certain checks petitioner had deposited in his trust account; and the Internal Revenue Service levied on petitioner's general account.

### 2. *The Smyth Matter*

Petitioner had represented Smyth in various business matters for a number of years. In 1986, Smyth loaned money to the owner of an airplane, the owner defaulted, and Smyth became the owner of the airplane. Smyth and petitioner agreed that petitioner would sell the plane and that petitioner would receive 50 percent of the sale price as his compensation.

In August 1986, petitioner sold the plane for $3,000. With the proceeds, petitioner satisfied a $1,500 lien on the plane. Petitioner did not deposit the remaining $1,500 in his client trust account. Three days after the sale, petitioner gave Smyth a check for $1,500 drawn on his client trust account; the sum included $750 for the plane sale proceeds and additional money that petitioner owed Smyth from transactions not related to this case. The check was returned because of insufficient funds. The account on which the check was drawn had been closed before the check was written.

In mid-March 1987, petitioner gave Smyth a second check for $1,500. The check was drawn on petitioner's general account and was postdated to the end of the month. Smyth deposited the check before the end of the month; it was returned for insufficient funds. There is a conflict in the evidence as to whether petitioner requested that Smyth not deposit this check before March 31, 1987. Also, according to petitioner, Smyth owed him attorney fees and petitioner believed he was entitled to offset those unpaid fees against the amounts he owed Smyth.[2]

---

[1] The additional $2.50 was apparently meant to reimburse Schaefer for bank charges.

[2] Petitioner claims in his brief that Smyth "has recanted his testimony by declaring he was not sure of the amount in question and in fact . . . did owe petitioner fees for professional

Smyth complained to the State Bar. Smyth and petitioner then conferred. In August 1988, petitioner paid Smyth $1,500 by cashier's check, and Smyth signed a letter to the State Bar composed by petitioner stating that the matter had been resolved satisfactorily.

### 3. *Proceedings Before Hearing Panel and Review Department*

The hearing panel, consisting of a single referee, found that in the Northway matter petitioner had failed to deposit the settlements funds received from Northway in his client trust account, allowed the funds to be commingled with other funds, and did not promptly pay the funds received, in violation of Business and Professions Code sections 6068, subdivision (a), 6103, and 6106[3] and former rules 8-101(A) and 8-101(B)(4) of the Rules of Professional Conduct.[4] The hearing panel also found that petitioner did not misappropriate any funds.

In the Smyth matter, the hearing panel found that petitioner had failed to promptly pay Smyth the funds due Smyth, in violation of former rule 8-101(B)(4) of the Rules of Professional Conduct. The hearing panel also found that petitioner did not willfully misappropriate any funds.

In mitigation, the hearing panel found that petitioner had no prior discipline in 16 years of law practice. The hearing panel also noted that in 1986

---

services rendered at the time he first complained to the Bar." Petitioner requests permission to submit a declaration by Smyth at some later unspecified date.

Although this court has on occasion considered matters extrinsic to the record in State Bar proceedings, as a general policy we do not consider evidence that was not presented to the State Bar during the review process. (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740]; *In re Possino* (1984) 37 Cal.3d 163, 171 [207 Cal.Rptr. 543, 689 P.2d 115].) This policy is particularly appropriate in this case. The credibility of a witness repudiating prior testimony is virtually impossible to evaluate in the absence of cross-examination. (See *Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217].) We decline to consider the declaration that petitioner now seeks to provide.

[3] Business and Professions Code section 6068, subdivision (a) provides that it is the duty of an attorney to "support the Constitution and laws of the United States and of this state." Business and Professions Code section 6103 states, in relevant part, that any violation of an attorney's duties is cause for disbarment or suspension. Business and Professions Code section 6106 provides, in relevant part, that the commission of any act involving moral turpitude, dishonesty or corruption constitutes cause for disbarment or suspension.

[4] On May 27, 1989, after the misconduct in this case, the former Rules of Professional Conduct were superseded by new Rules of Professional Conduct. The subject matter of former rule 8-101 of the Rules of Professional Conduct is now addressed in new rule 4-100 of the Rules of Professional Conduct.

Former rule 8-101(A) of the Rules of Professional Conduct, as here relevant, required an attorney to deposit funds received or held for the benefit of clients into a trust account, and prohibited the commingling of the attorney's funds with client funds. Former rule 8-101(B)(4) of the Rules of Professional Conduct required an attorney to promptly pay to clients funds in the attorney's possession that the client was entitled to receive.

and 1987 petitioner was in the process of a divorce and was subject to unusual emotional strain, but it found that the evidence did not establish "personal problems" or "severe psychological difficulties" as mitigating factors. The hearing panel recommended that petitioner be suspended from law practice for two years, with execution of the suspension stayed on the condition that he be placed on probation for two years and actually suspended for four months.

The review department, by a vote of 11 to 1, modified the findings and conclusions of the hearing panel. In the Northway matter, the review department adopted the findings and conclusions of the hearing panel, with one exception. It determined that petitioner had not committed an act of moral turpitude, dishonesty or corruption and thus had not violated Business and Professions Code section 6106.

In the Smyth matter, the review department replaced the hearing panel's finding that petitioner had violated only former rule 8-101(B)(4) of the Rules of Professional Conduct (by failing to promptly pay to Smyth the funds Smyth was entitled to receive) with its own finding that he had willfully failed to promptly pay the funds due Smyth and that he had willfully misappropriated $750, in violation of Business and Professions Code sections 6068, subdivision (a), 6103, 6106 and former rule 8-101(B)(4) of the Rules of Professional Conduct.

The review department recommended that petitioner be suspended from the practice of law for three years, with the suspension stayed on conditions that included three years of probation and a one-year actual suspension.

DISCUSSION

As noted earlier, petitioner raises two issues. He maintains that the evidence does not support the findings of the hearing panel and that the discipline recommended by the review department is excessive.

1. *Sufficiency of Evidence*

█ In reviewing State Bar cases, we accord great weight to the evidentiary findings of the review department. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 931 [258 Cal.Rptr. 235, 771 P.2d 1323]. But we independently examine the record and weigh the evidence; we are not bound by the review department's findings of fact or conclusions of law. Petitioner bears the burden of demonstrating error in the review department's findings and conclusions. (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].) The charges against an attorney must, however, be

supported by convincing proof to a reasonable certainty. (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215-1216 [270 Cal.Rptr. 315, 791 P.2d 994].)

■ Although petitioner broadly asserts that the findings are not supported by the evidence, he specifically challenges only one finding of fact. He disagrees with the hearing panel's finding that Smyth canceled a $15,000 check he had given petitioner in connection with a contemplated investment, claiming that Smyth's check was returned because of insufficient funds. The review department, however, did not adopt this finding, and it is not material to the misconduct in this case. Moreover, petitioner does not contend that the asserted error in finding that this check was canceled rather than returned for insufficient funds compels a different conclusion regarding his violation of his duties as an attorney, or that the asserted error in any way affects the proper discipline.

Our independent review of the record reveals that the evidence supports the findings, and discloses no error in the conclusions of law the review department drew from the findings.[5]

One finding deserves comment. The review department determined that Smyth was petitioner's client. Petitioner had represented Smyth as an attorney in various matters, but the airplane sale was a straightforward business transaction, which did not involve the practice of law. (See *Bluestein* v. *State Bar* (1974) 13 Cal.3d 162, 173 [118 Cal.Rptr. 175, 529 P.2d 599, 91 A.L.R.3d 570]; *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 542-543 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036].) Although petitioner did not act as an attorney in the airplane sale, this circumstance does not insulate him from discipline. We have held that when an attorney serves a single client both as an attorney and as one who renders nonlegal services, he or she must conform to the Rules of Professional Conduct in the provision of all services. (*Layton* v. *State Bar* (1990) 50 Cal.3d 889, 904 [268 Cal.Rptr. 845, 789 P.2d 1026])

---

[5] The hearing panel noted, but did not resolve, the dispute regarding whether Smyth owed petitioner attorney fees.

Even if we fully credited the purported declaration by Smyth that petitioner seeks to provide regarding the attorney fees Smyth allegedly owed petitioner (see fn. 2), it would not affect our resolution of this case. The essential facts remain: (1) petitioner owed Smyth $750 as Smyth's share of the proceeds from the airplane sale; (2) petitioner paid Smyth the $750 approximately two years later, after Smyth had complained to the State Bar; and (3) petitioner never placed Smyth's $750 in trust. Even assuming that Smyth owed fees to petitioner for professional services in an uncertain amount when he complained to the State Bar, petitioner was not entitled to unilaterally determine that the amount he was entitled to receive for professional services could be used to offset the $750 he should have held in trust for Smyth. (*Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 404 [158 Cal.Rptr. 869, 600 P.2d 1326].)

### 2. *Discipline*

■ We accord great weight to the disciplinary recommendation of the review department. (*Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1154 [270 Cal.Rptr. 12, 791 P.2d 598].) Petitioner bears the burden of demonstrating that the recommended discipline is erroneous or unlawful. (*In re Abbott* (1977) 19 Cal.3d 249; 253 [137 Cal.Rptr. 195, 561 P.2d 285].) But we exercise our independent judgment in deciding appropriate discipline (*Howard* v. *State Bar* (1990) 51 Cal.3d 215, 220 [270 Cal.Rptr. 856, 793 P.2d 62]), considering all relevant aggravating and mitigating circumstances (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239]).

■ In determining what discipline to impose here we consider these factors: In the Northway matter, petitioner failed to deposit in his trust account funds received from the client, he commingled these funds with other funds, and he did not promptly pay the funds. In the Smyth matter, petitioner willfully failed to promptly pay the funds due Smyth, and he willfully misappropriated $750.

Standard 2.2(b) of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct) (all further references to standards are to these provisions) states that commingling of entrusted funds, or other offenses involving client funds not amounting to willful misappropriation, shall result in at least three months' actual suspension. Standard 2.2(a) provides that disbarment is the usual discipline for an attorney who has willfully misappropriated entrusted funds, and that a lesser discipline shall be imposed only if the amount misappropriated is insignificantly small or "the most compelling mitigating circumstances clearly predominate," in which case the attorney shall be actually suspended for one year. ■ We have stressed, however, that we do not follow the standards in rigid fashion (*Howard* v. *State Bar*, *supra*, 51 Cal.3d at p. 221), and have observed that standard 2.2(a), insofar as it requires a minimum of one year of actual suspension, is "not faithful to the teachings of this court's decisions." (*Edwards* v. *State Bar* (1990) 52 Cal.3d 28, 38 [276 Cal.Rptr. 153, 801 P.2d 396].)

■ The most serious conclusion that can be drawn from petitioner's misconduct is that he willfully misappropriated $750 belonging to Smyth. As used in attorney discipline cases, the term willful misappropriation covers "a broad range of conduct varying significantly in the degree of culpability." (*Edwards* v. *State Bar*, *supra*, 52 Cal.3d at p. 38.)

In this case, petitioner's willful misappropriation of client funds was not accompanied by acts of deceit. Although the record is unclear on this point,

the circumstances surrounding the Smyth matter indicate that petitioner's failure to promptly remit the funds to Smyth, though inexcusable, was probably the result of petitioner's negligent banking practices and a misunderstanding of his duties rather than an intent to harm. This conclusion is supported by the fact that the hearing referee, who heard the evidence and evaluated the credibility of the witnesses, said at the misconduct hearing there was no evidence that petitioner had willfully misappropriated and converted to his own use any entrusted funds. ██ ██ Although the referee may not have been aware that under our decisions willful misappropriation may be found in the absence of deliberate wrongdoing (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 795 [205 Cal.Rptr. 834, 685 P.2d 1185]), this determination underscores the absence of any evidence of fraudulent intent.

The absence of harm to the attorney's clients or others resulting from the misconduct may be a significant mitigating factor in attorney discipline cases. (Std. 1.2(e)(iii).) Here, in the Northway matter, both the hearing panel and the review department concluded that no one suffered any monetary loss as a result of petitioner's conduct. We disagree. Petitioner's failure to promptly pay to plaintiff Peightel the funds received from petitioner's client, defendant Northway, deprived Peightel of the use of $2,000 for approximately six weeks. This was a monetary loss, albeit not a particularly grievous one.

With respect to Smyth, the hearing panel found that he sustained no monetary loss as a result of petitioner's misconduct; the review department did not adopt this finding. We disagree with the hearing panel: Smyth was deprived of $750 for approximately two years. This monetary injury is genuine, although not severe.

In the Northway matter, petitioner's delivery of a cashier's check on notification that his second check had been returned for insufficient funds, before any complaint to the State Bar or knowledge that a complaint would be made, indicates the absence of intent to misappropriate. In the Smyth matter, the hearing panel specifically found that there was a dispute between Smyth and petitioner regarding whether petitioner was entitled to offset the amount due Smyth for the proceeds of the plane sale with other amounts assertedly due to petitioner for attorney fees. ██ ██ ██ ██ ██ ██ ██ Although the lack of wrongful intent does not excuse petitioner's misconduct,[6] it is an important consideration in determining

---

[6] As noted earlier, an attorney is not entitled to unilaterally determine that fees in a certain amount are owed by a client and then withhold those fees from funds held in trust over the client's objections. (*Jackson* v. *State Bar, supra*, 25 Cal.3d 398, 404.)

what discipline to impose. (See *Edwards* v. *State Bar, supra,* 52 Cal.3d at p. 38.)[7]

■ ▬ ■ ■ Before the misconduct petitioner had practiced for 13 years in this state without any disciplinary record.[8] We have previously found an unblemished record for a similar period to be "an important mitigating circumstance." (*Schneider* v. *State Bar, supra,* 43 Cal.3d at pp. 798-799; accord *Waysman* v. *State Bar, supra,* 41 Cal.3d at p. 457.)

Petitioner's misconduct is serious and inexcusable. Therefore, a period of actual suspension is necessary to serve the purposes of professional discipline, including preservation of public confidence in the legal profession. But in light of the mitigating circumstances discussed previously, including petitioner's 13 years of practice without discipline, the absence of serious injury to petitioner's clients or other parties, and the lack of convincing evidence of wrongful intent, the one-year period of actual suspension recommended by the review department is excessive. A 120-day actual suspension, as recommended by the hearing panel, is adequate to protect the public.

## DISPOSITION

We order that petitioner Patrick B. Kelly be suspended from the practice of law for three years from the date this opinion is final but that execution of

---

[7] We agree with the review department and the hearing panel that petitioner failed to satisfy the evidentiary standards required to establish extreme emotional difficulty as a mitigating factor when he testified that during the period the misconduct occurred, he was undergoing a divorce and suffered emotional strain. (*Bowles* v. *State Bar* (1989) 48 Cal.3d 100, 110 [255 Cal.Rptr. 846, 768 P.2d 65].) Petitioner presented no expert testimony regarding his emotional difficulties, apparently did not seek therapy or counseling of any sort, and testified as to his emotional distress in vague, conclusory and somewhat equivocal terms. Although divorce is often stressful, divorce alone does not establish a circumstance in mitigation.

We also conclude that petitioner's testimony about his financial difficulties is entitled to little weight in mitigation. Some financial pressures are present in almost all misappropriation cases. (*Grim* v. *State Bar* (1991) 53 Cal.3d 21, 31 [278 Cal.Rptr. 682, 805 P.2d 941].) Petitioner testified that as a result of his divorce he "lost the house [and] about $85,000," and that because he was distracted by his divorce he was inattentive and his income from practice suffered. But this bare testimony falls short of a showing that he was subject to severe financial pressures that were not reasonably foreseeable or were beyond his control. (See *In re Naney* (1990) 51 Cal.3d 186, 196 [270 Cal.Rptr. 848, 793 P.2d 54].)

[8] The hearing panel found as a mitigating circumstance that petitioner had practiced for 16 years before the misconduct hearing without any discipline. Our cases, however, make clear that the number of years before the misconduct itself, not before the misconduct hearing, is the relevant measure in assessing a period of unblemished practice that may be considered as a mitigating circumstance. (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798-799 [239 Cal.Rptr. 111, 739 P.2d 1279].) Here, petitioner was admitted to the bar in 1973, the misconduct began in 1986, and the hearing was held in 1989. Thus, 13 years is the correct measure of time of practice without discipline.

the suspension order be stayed and that he be placed on probation for three years on all the conditions of probation adopted by the review department at its October 30, 1989, meeting, except that petitioner shall be actually suspended from the practice of law for only the first one hundred twenty days of the probationary period.

It is further ordered that petitioner Patrick B. Kelly comply with the requirements of rule 955 of the California Rules of Court, that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order (under Bus. & Prof. Code § 6126, subd. (c), failure to comply with rule 955 of the Cal. Rules of Court may result in imprisonment) and that he take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within 1 year of the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)