[S.F. No. 23496. Mar. 24, 1977.]

In re WILLIAM H. ABBOTT on Disbarment.

**COUNSEL**

Coleman A. Blease and Blease, Vanderlaan & Rothschild for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

**OPINION**

**THE COURT.\***—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar that William Abbott be disbarred.

Abbott, a 51-year-old attorney admitted to practice in 1958, pleaded guilty to a charge of grand theft. In October 1972 the court sentenced him to prison but suspended execution of the sentence and placed him on five years' probation on conditions including one year in jail and the making of restitution.

In December 1972 we placed Abbott on interim suspension since the crime involved moral turpitude (Bus. & Prof. Code, § 6102, subd. (a)), and after the judgment of conviction became final, we referred the matter to the State Bar on the issue of discipline. Following an evidentiary hearing, both the local committee and disciplinary board unanimously recommended disbarment.

In law school Abbott received various honors before graduating in 1957. After serving as a research attorney for a judge, he entered private practice in Sacramento in 1959 and practiced continuously until the latter part of 1971.

Abbott's conviction arose out of his misappropriation of $29,500 belonging to his clients, Mr. and Mrs. Richard Ruhstaller. On April 1, 1971, they retained him to attempt to rescind a contract to purchase a

---

*Before Tobriner, Acting C. J., Mosk, J., Clark, J., Sullivan, J.,† Wright, J.,‡ and Draper, J.\*\* Richardson, J. did not participate therein.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

‡Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

\*\*Assigned by the Chairman of the Judicial Council.

motel. He falsely represented to them that before he could commence such a proceeding they were required to deposit $29,500 with him to show their ability to perform pursuant to the contract.

The Ruhstallers delivered the $29,500 to Abbott, and he deposited the money in his trust account on April 2, 1971. Had the deposit not been made, the account would have contained insufficient funds to cover a $4,520 check he had previously issued on the account. He misappropriated most of the $29,500 within about two months and ultimately the entire sum.

When the Ruhstallers delivered the $29,500 to Abbott, they asked him to return the money later that same month. About April 12, 1971, he falsely represented to them that the money was in a 7 percent interest bearing account. No such account existed. They then agreed to his retaining the funds until the case was settled. He subsequently made several interest payments to them out of his own funds in furtherance of the misrepresentation. In October 1971 he wrote them a letter in which he referred to "our suit for fraud," when in fact he had prepared, but not filed, a complaint on their behalf.

Abbott entered a psychiatric hospital in August 1971 but left a few days later against medical advice. He attempted to resume practice but soon voluntarily ceased practicing when he found himself unable to continue functioning as a person and an attorney and was again hospitalized.

All three psychiatrists who testified at the disciplinary hearing were of the opinion that Abbott suffered from a manic-depressive psychosis at the time of the crime. Clarence Miller, M.D., a psychiatrist who treated Abbott intermittently from August 1971 until the committee hearing in October 1974, believed that Abbott's psychosis began several years before the offense. According to Dr. Miller, Abbott knew what he was doing when he misappropriated the funds and "from a theoretical standpoint . . . did identify it as being wrong," but the disorder "would not allow [him] to appreciate the moral and legal implications of [his] acts at that time." Elmer Galioni, M.D., a psychiatrist who examined Abbott in June 1972 and September 1974, similarly believed that the disorder affected Abbott's judgment, and Irwin Lyons, M.D., a psychiatrist who examined Abbott three times in September 1974, testified that "a person who is manic . . . would tend to have a feeling that he is sort of above the rules . . . that govern ordinary men . . . ."

Drs. Miller and Galioni indicated Abbott's illness was in remission, and Dr. Lyons testified that it was "in a borderline semi-state of remission . . . ." Dr. Miller thought it "not unlikely" that Abbott might have another manic attack, and Dr. Lyons' testimony was similar. Dr. Galioni, however, thought there probably would not be a recurrence of such an attack if Abbott remained on medication.

Drs. Miller and Galioni believed that Abbott could be allowed to resume practice so long as he continued to receive chemotherapy and psychotherapy. According to Dr. Galioni, it would be "good insurance" for Abbott and the public if he practiced with another attorney who could watch for signs of the illness's recurrence. Dr. Miller thought it desirable for Abbott to be under another attorney's supervision since Abbott would then be less anxious but that such supervision was not essential. Dr. Lyons' opinion was that Abbott was capable of functioning "on a limited basis" as an attorney but that for the protection of the public and himself conditions should be imposed including, among others, that he not handle trust funds and that he work with other attorneys who could intercede if he began to get manic again.

Abbott testified that he felt with psychotherapy and chemotherapy his illness was under control. He expressed a willingness to accept restrictions on his return to practice.

Although we, of course, have the final word as to the discipline to be imposed, the board's recommendation is given great weight (*In re Distefano* (1975) 13 Cal.3d 476, 480 [119 Cal.Rptr. 105, 531 P.2d 417]), and the burden is on Abbott to show that the board's recommendation is erroneous or unlawful (*In re Lyons* (1975) 15 Cal.3d 322, 325 [124 Cal.Rptr. 171, 540 P.2d 11]). In our opinion he has not sustained that burden.

The crime of which he was convicted manifestly was grave. He argues, however, that disbarment is unwarranted in view of mitigating matters and that the appropriate discipline is suspension for the period already served plus probation on conditions.

He has no prior disciplinary record. (*Segretti v. State Bar* (1976) 15 Cal.3d 878, 888 [126 Cal.Rptr. 793, 544 P.2d 929].) His probation officers testified favorably in his behalf, and several judges and attorneys wrote letters in which they commented on his professional competency and expressed faith in his honesty. (*In re Cohen* (1974) 11 Cal.3d 935, 944

[114 Cal.Rptr. 611, 523 P.2d 651].) In addition, he displayed remorse. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].)

He points to evidence that he made partial restitution and intends to make full restitution. No restitution was made until after he was placed on probation and, as noted, restitution was a condition of his probation. ■ "[A]n attorney ' " 'is not entitled to any indulgence by reason of restitution of moneys wrongfully retained [or taken], especially where such restitution is made merely as a matter of expediency and under pressure. (*Herrscher* v. *State Bar of California,* 4 Cal.2d 399 . . . .)' " ' (*Resner* v. *State Bar,* 53 Cal.2d 605, 614 . . . .)" (*In re Cohen, supra,* 11 Cal.3d 935, 943.)

■ Abbott's crime may have been at least in part a product of his psychosis, but that fact would not exonerate him. (*In re Duggan* (1976) 17 Cal.3d 416, 423-424 [130 Cal.Rptr. 715, 551 P.2d 19].) As above appears, his illness is in remission or semi-remission and he is receiving treatment, but the prognosis is not uniformly favorable. ■ While we sympathize with him regarding his psychiatric problems, " '[o]ur primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause . . . .' " (*In re Duggan, supra,* at p. 423, quoting from *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 685 [58 Cal.Rptr. 564, 427 P.2d 164].)

■ We conclude in view of the gravity of the crime and in light of all the circumstances of the case that disbarment, as unanimously recommended by both the board and local committee, is the appropriate discipline.[1]

It is therefore ordered that William H. Abbott be disbarred from the practice of law and that his name be stricken from the roll of attorneys. It is further ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of the opinion.

---

[1]Abbott, of course, may seek reinstatement at the time specified in the Rules of Procedure of the State Bar (see rule 45.30), and in such a proceeding the burden is on him to show his rehabilitation (see rule 47.20, Rules of Procedure of the State Bar).