[No. S003401. June 13, 1988.]

JOHN PATRICK KELLY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

John Patrick Kelly, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and Djinna M. Gochis for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review the State Bar Court's unanimous recommendation that petitioner John Patrick Kelly[1] be disbarred for misappropriation of client trust funds and related misconduct. Our general practice, which is supported by the new Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, eff. Jan. 1, 1986) (Standards), has been to impose strong disciplinary measures where a substantial amount of client funds has been misappropriated and no compelling mitigating circumstances are present. Since petitioner's undisputed expenditure of almost $20,000 in client funds was clearly unauthorized, wholly unexplained, and accompanied by another wrongful act, we adopt the recommended discipline.

## BACKGROUND

This case concerns misconduct committed by petitioner while representing a single set of clients, Mr. and Mrs. Miltimore.

### A. *Charges*

The notice to show cause filed on September 25, 1985, and amended on September 10, 1986, was divided into two counts. Count I alleged that petitioner wilfully misappropriated client funds (Rules Prof. Conduct, rule 8-101(B)(4)),[2] committed acts of moral turpitude and dishonesty (Bus. & Prof. Code, § 6106), and violated the oath and duties of an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103). Count II alleged that petitioner wilfully communicated with an adverse party upon a subject of controversy, knowing the party was represented by counsel, without the express consent of counsel. (Rule 7-103.)

### B. *Evidence*

The facts underlying count I (misappropriation) are—with two exceptions—undisputed. Petitioner had been handling the Miltimores' legal affairs for three or four years before the instant events occurred. In August 1981, the Miltimores gave petitioner an escrow check for $34,597.05 which they had received upon the sale of certain real property. They asked him to hold the money indefinitely on their behalf in his client trust account.

---

[1] Petitioner declined to appear at oral argument before this court.

[2] All further rule citations are to the Rules of Professional Conduct unless otherwise indicated.

On September 30, 1981, petitioner sent the Miltimores a copy of a deposit slip showing that he had placed the entire check into his client trust account.[3] He also enclosed a letter describing the activity which had since taken place on that account. Specifically, he had made a $5000 cash disbursement to the Miltimores at their request. He also had withdrawn $10,000 and invested it in real property located in the Simi Valley (the Simi Valley property).[4] The parties disagree as to whether the Miltimores actually authorized this $10,000 withdrawal. They do agree, however, that the foregoing activity left a balance of $19,597.05 in the account.

Between September 30, 1981, and March 1, 1982, petitioner admittedly spent the entire balance in the trust account. Although the Miltimores each testified that they had not authorized any withdrawals, petitioner testified that they had orally agreed to "loan" him the $19,597.05.

At some point during this period, the Miltimores asked petitioner to return the balance in their trust account. When petitioner replied that he had spent and could not repay the money, the Miltimores asked for some proof of his indebtedness. On March 1, 1982, petitioner executed a promissory note for $19,500 which was payable in full upon 30 days' notice.

The Miltimores made repeated oral and written demands for payment under the note. When their efforts proved unsuccessful, they hired Attorney Estelle Levine to assist in their collection efforts. In October 1982, Levine negotiated a new promissory note on the Miltimores' behalf, in which petitioner agreed to pay $29,500, plus interest. A year later, in November 1983, petitioner made his first and only payment under this note, in the amount of $10,000.

The Miltimores eventually hired another attorney, Carl Yoder, who, in June 1984, filed a complaint against petitioner for recovery of the balance owed under the note. Settlement negotiations followed, during which time Yoder represented the Miltimores, and Attorney Joseph Laird represented petitioner. On September 6, 1985, the parties formally agreed that petitioner would pay the Miltimores a total of $30,651 in full satisfaction of their claim. Petitioner testified that, as of the September 2, 1986, hearing before the referee, he had made only two $5,000 payments under the settlement agreement.

The facts underlying count II (improper communication with an adverse party) occurred shortly after this agreement was reached, and are not

---

[3] The Miltimores' escrow check apparently was the only money in petitioner's trust account at the time the instant events occurred.

[4] The only evidence that any "investment" was ever made is petitioner's uncorroborated statement to that effect.

materially disputed. On September 13, 1985, petitioner phoned the Milti-mores at home and asked if he could meet with them. Mr. Miltimore answered "no," because his wife was scheduled to undergo certain tests at the hospital that day. Nevertheless, petitioner and Attorney Laird visited the Miltimores at home, after they had returned from the hospital. Petition-er asked the Miltimores to sign a "statement of facts" which described all of the disputed trust fund withdrawals as "loans." This written statement was substantially similar to one which Yoder had earlier advised his clients not to sign. Mrs. Miltimore refused to sign the statement but Mr. Miltimore did. He testified that he felt coerced into doing so because petitioner's attorney indicated that no settlement payments would otherwise be made. Mr. Miltimore further testified that he and his wife were both "upset," and they just wanted the two men to leave.

Yoder was not present when these events occurred and had not been advised that such a meeting would take place. It is clear from the record that petitioner knew the Miltimores were represented by Yoder at all relevant times.

## C. *Findings*

Based on the foregoing facts, the hearing referee found petitioner culpa-ble of all charges—wilfully misappropriating $19,597.05 in client trust funds; wilfully failing to account to the client;[5] wilfully and wrongfully contacting an adverse party without the knowledge and consent of counsel; and moral turpitude and dishonesty.[6]

The referee also found no factors in aggravation or mitigation, and sum-marily recommended disbarment. The referee's decision is silent as to whether petitioner has a prior disciplinary record.

The review department unanimously adopted the findings and the disci-plinary recommendation, with one minor modification in the recommenda-tion of disbarment.[7]

---

[5] Although the notice did not specifically allege a failure to account, such a violation is im-plied in the allegation that petitioner misappropriated funds and thereby violated rule 8-101(B)(4). (See, e.g., *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 979 [239 Cal.Rptr. 675, 741 P.2d 172].) The referee based the nonaccounting finding on two uncontroverted facts—peti-tioner's failure to respond to the Miltimores' demands for the trust account money, and his execution of a $19,500 promissory note which was $97.05 "short" of the balance which had been in the account.

[6] Although the referee did not specifically address whether petitioner had violated the oath and duties of an attorney as charged, such finding is clearly implied in the findings of dishon-esty and misappropriation.

[7] The review department added a provision recommending that, in the event this court or-ders disbarment, petitioner be ordered to comply with the requirements of rule 955 of the California Rules of Court.

## DISCUSSION

### A.  *Sufficiency of the Evidence* [8]

■ ■ ■ ■  Petitioner's factual arguments are focused exclusively upon the circumstances under which he depleted the trust account. He first notes that there is conflicting testimony concerning the $10,000 he claims to have invested in the Simi Valley property (e.g., the Miltimores testified that they had considered but ultimately refused participating in the project; petitioner testified that they had given him their oral consent; and a letter written to petitioner indicates that the Miltimores did not object to the $10,000 withdrawal). Petitioner apparently believes that the mere existence of a factual dispute sheds doubt on the overall trustworthiness of the findings.

We begin by noting that petitioner has an overly simplistic view of the manner in which we resolve such evidentiary challenges.  ■  Although this court independently reviews the evidence, the State Bar Court's findings are viewed with "great deference, particularly when based on evaluations of credibility." (*Maltaman* v. *State Bar* (1987) 43 Cal.3d 924, 932 [239 Cal.Rptr. 687, 741 P.2d 185]; see also, Bus. & Prof. Code, § 6083, subd. (c).) The hearing panel is best suited to resolving credibility questions, because it alone is able to observe the witnesses' demeanor and evaluate their veracity firsthand. (*Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 690 [238 Cal.Rptr. 774, 739 P.2d 134].) Against this backdrop, the petitioner must demonstrate that the findings are not sustained by convincing proof and to a

---

[8] Included in petitioner's factual discussion is a vague and conclusory attack on the impartiality of the hearing process. Petitioner insists that, because the State Bar Board of Governors (Board) oversees both the "prosecutorial" and "judicial" functions in attorney discipline matters, he was deprived of his due process right to a fair hearing. While making no charge of actual bias on the part of the State Bar Court's referees, petitioner apparently contends that an alleged appearance of bias rendered the proceedings inherently unfair.

We first observe that parties to a disciplinary proceeding may seek to disqualify any State Bar Court referee whose participation threatens the fairness of the proceedings. The procedural steps for making such a motion are clear-cut, and the challenge may be made on the grounds of actual bias or the appearance thereof. (Rule 230, Rules Proc. of State Bar; citing Code Civ. Proc., § 170.1(a), subds. (1)-(5), (7).) Petitioner made no such challenge here, nor does any basis for doing so appear in the record.

In addition, we previously have upheld State Bar disciplinary proceedings against the same due process challenge. (*Kitsis* v. *State Bar* (1979) 23 Cal.3d 857, 864-865 [153 Cal.Rptr. 836, 592 P.2d 323].) In *Kitsis,* we noted that the Board oversees various local committees and boards, amongst which the investigative, prosecutorial, and adjudicative functions are divided. No one entity is vested with more than one such function. (*Ibid.*) More importantly, the Board, acting through the State Bar Court, is not the final arbiter in disciplinary matters. It is this court which independently makes findings of fact and decides the discipline which ultimately is to be imposed. (*Kitsis, supra,* 23 Cal.3d at p. 865; see also, Bus. & Prof. Code, §§ 6082, 6087.)

reasonable certainty. (*Galardi, supra,* 43 Cal.3d at p. 689.) Merely repeating conflicts in the evidence does not satisfy this burden. (See, e.g., *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 132 [207 Cal.Rptr. 302, 688 P.2d 911].)

Moreover, this particular factual dispute was resolved in petitioner's favor. The finding of wilful misappropriation related solely to the $19,597.05 balance which was in the account *after* the $10,000 withdrawal was made. Thus, the State Bar Court implicitly found no clear and convincing evidence that petitioner had misappropriated any of the money he purports to have invested in the Simi Valley property. He therefore has no grounds to complain on this point.

■ Petitioner also asks us to independently find that he was authorized to spend the entire $19,597.05. However, as implied by the findings, petitioner's explanation in this regard is inherently implausible. The Miltimores each testified that no part of the balance was ever loaned to petitioner, and that they were basically shocked to learn that he had spent it. A letter they wrote to petitioner in June 1982 confirmed this fact. The only controverting testimony was petitioner's self-serving claim that the Miltimores had agreed to loan him the money. And, other than the written "statement" which clearly was not voluntarily signed by Mr. Miltimore, petitioner had no documentary support for this claim. Petitioner also could not recall the purpose for which the "loan" was supposedly made. Accordingly, we see no reason to depart from the finding that petitioner wilfully misappropriated $19,597.05 in client trust funds.

### B. *Appropriate Discipline*

■ Misappropriation of client trust funds has long been viewed as a particularly serious ethical violation. (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908]; *Tardiff* v. *State Bar* (1971) 3 Cal.3d 903, 908 [92 Cal.Rptr. 301, 479 P.2d 661]; *In re Urias* (1966) 65 Cal.2d 258, 262 [53 Cal.Rptr. 881, 418 P.2d 849].) It breaches the high duty of loyalty owed to the client, violates basic notions of honesty, and endangers public confidence in the profession. (*Wells* v. *State Bar* (1975) 15 Cal.3d 367, 371 [124 Cal.Rptr. 218, 540 P.2d 58]; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) Although there is no "fixed" disciplinary formula (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289]), misappropriation generally warrants disbarment unless "clearly extenuating circumstances" are present. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].)

The most obvious candidates for disbarment are attorneys who have been found culpable of misappropriating a large sum of money from several

clients. Such broad scale wrongdoing suggests that the attorney is likely to repeat his misconduct and is simply not worthy of the public trust. (See e.g., *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 664 [238 Cal.Rptr. 394, 738 P.2d 740] [disbarment ordered for attorney who misappropriated several thousand dollars from five clients in order to finance cocaine and alcohol addictions].) Disbarment also has been ordered where the attorney misappropriated funds from a small number of clients but committed other misdeeds. (See, e.g., *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 132 [192 Cal.Rptr. 866, 665 P.2d 956] [attorney disbarred for misappropriating several thousand dollars from two sets of clients, coupled with issuing checks on insufficient funds, commingling, and client abandonment].)

Even a single "first-time" act of misappropriation has warranted such stern treatment. For example, in *In re Abbott* (1977) 19 Cal.3d 249, 253-254 [137 Cal.Rptr. 195, 561 P.2d 285], an attorney who had been practicing 13 years with no prior disciplinary record misappropriated $29,500 in a single client matter. Although his conduct could be traced to a manic-depressive condition for which he was undergoing treatment, his prognosis was uncertain. We ordered disbarment in order to ensure the public's protection from further harm.

In short, a lesser discipline is warranted only where extenuating circumstances show that the misappropriation of entrusted funds was an isolated event. In *Lawhorn, supra,* 43 Cal.3d at pages 1365-1367, an attorney was found to have committed four professional violations due to a single act of withdrawing all of the money from a client's trust account, and "stashing" it in his refrigerator at home. In imposing five years' probation, and two years' actual suspension, we relied heavily upon the fact that a relatively insubstantial sum of money—$1,355—was involved. Furthermore, several factors indicated that the misconduct was not likely to recur: petitioner was acting on a groundless but nonetheless real fear that his wife could freeze the trust account during their pending divorce proceeding; he was relatively inexperienced as an attorney; he made full, voluntary restitution before receiving formal notice that disciplinary proceedings had begun; and he cooperated in the State Bar's investigation by disclosing his marital difficulties and revealing that he had sought psychiatric counseling during the critical period. (*Id.* at pp. 1366-1367.)

■ In the instant case, however, petitioner's culpability is both egregious and inexplicable.[9] As in *Abbott, supra,* 19 Cal.3d at page 249, a large

---

[9] This case involves a "single" instance of misappropriation only in the sense that petitioner was charged with, and found culpable of, one count of violating rule 8-101(B)(4). As a practical matter, however, we do not know the number of unauthorized withdrawals he actually made from the Miltimores' account. All that is clear is that the account was depleted in an

amount of money was involved. And, unlike the attorney in *Lawhorn, supra,* 43 Cal.3d at page 1357, who was attempting to safeguard the client's money, petitioner acted in a self-interested fashion and spent the entire amount. There also is no evidence suggesting that petitioner's behavior was an isolated act. He cited no personal or professional problems causing him undue stress at the time he committed the instant wrongs.

The only potentially mitigating factor is petitioner's lack of a disciplinary record. He was admitted to the bar in 1973, and had been practicing seven and one-half years when the instant misconduct occurred. However, as suggested by the State Bar Court's silence on this point, petitioner's lack of a prior record is not especially commendable. Petitioner had been practicing long enough to know that his conduct was wrong, but not so long as to make his blemish-free record surprising.

Petitioner's partial repayment of the debt also does not mitigate his misconduct. Mrs. Miltimore testified that as early as September 1981, before any money had been repaid, she informed petitioner that she would complain to the State Bar unless the money was soon returned. Although it is not clear exactly when that complaint was formally made, petitioner knew that the State Bar had been involved in this matter at the time the settlement agreement was negotiated in 1985. In fact, most of the installment payments due under that agreement were required to be made at a point in time following service of the notice to show cause. Thus, the entire repayment process was not a voluntary and sincere effort to recompense injured clients, but was made under "pressure" of disciplinary proceedings. (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 47 [192 Cal.Rptr. 244, 664 P.2d 148].)

Finally, commission of a separate violation under rule 7-103 demonstrates the unacceptable degree to which petitioner was willing to place his interests above those of his clients. Although a formal settlement agreement had been reached, petitioner would not rest until he had extracted an additional exculpatory statement from his former clients. This overreaching increases the risk that he will repeat his misdeeds in the future.

We note that the State Bar Court's recommendation is supported by the new Standards. Under standard 2.2(a), "wilful misappropriation" of entrusted funds requires disbarment unless the amount in question is "insignificantly small" or "the most compelling mitigating circumstances clearly predominate." Here, the amount of money clearly was significant and absolutely no mitigating factors—compelling or otherwise—were presented.

---

amount totaling $19,597.05, over a five-month period between September 30, 1981, and March 1, 1982.

In sum, petitioner has committed two serious violations which are unexcused and unmitigated. The absence of an acceptable explanation, coupled with the self-interest underlying all of petitioner's actions, suggests that he is capable of committing wrongdoing in the future.

Accordingly, it is ordered that petitioner John Patrick Kelly be disbarred from the practice of law and that his name be stricken from the roll of attorneys in this state. It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon finality of this decision.