[No. S014875. June 6, 1991.]

TERRANCE R. McKNIGHT, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

David A. Clare for Petitioner.

Diane C. Yu, Richard J. Zanassi, Colin P. Wong and James R. DiFrank for Respondent.

## OPINION

**THE COURT.**—In this matter we review the recommendation of the State Bar Review Department (review department) that petitioner Terrance R. McKnight be suspended from the practice of law for five years, that the order of suspension be stayed, and that he be placed on probation for seven years on various conditions including an actual suspension of one year, restitution, and a limitation on his ability to practice as a sole practitioner. The recommendation is based upon findings that petitioner violated former Rules of Professional Conduct,[1] rule 5-101 (now rule 3-300, improperly entering into a business transaction with a client), rule 8-101(A) (now rule 4-100(A), failing to deposit client funds into a trust account), rule 8-101(B)(1) (now rule 4-100(B)(1), failing promptly to notify a client of the receipt of funds), and rule 8-101(B)(4) (now rule 4-100(B)(4), failing promptly to deliver client funds); and Business and Professions Code[2] section 6106 (committing an act involving moral turpitude [misappropriation of client trust funds]). After examining the record, we conclude the findings of the review department are supported by substantial evidence and the recommended discipline appropriate under the circumstances.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Petitioner was admitted to practice law in California in December 1977[4] and has no prior record of discipline. His acts of misconduct all involved one client, Olga Lenhoff, and occurred in 1985.

After petitioner answered a notice to show cause, the matter was set before a single referee sitting as the State Bar hearing panel (hearing panel). At the hearing, the following evidence was adduced:

Lenhoff originally retained petitioner in December 1983 to handle several legal concerns, including a corporate dissolution. On or about April 26, 1985, petitioner received on her behalf a check in the amount of $17,331.85, which represented Lenhoff's distributive share from the dissolution. He did not inform the client of this fact and placed only one-half the amount in a trust account. The other half he deposited into his personal account, an act

---

[1] Unless otherwise specified, all further rules references are to the former Rules of Professional Conduct.

[2] Unless otherwise specified, all statutory references are to the Business and Professions Code.

[3] All proceedings in this matter occurred under the former Rules of Procedure of the State Bar. (See generally former § 6079.1, amended by Stats. 1990, ch. 1639, § 5, No. 7 Deering's Adv. Legis. Service, pp. 7273-7274 [Assem. Bill No. 3991 (1989-1990 Reg. Sess.) § 5].)

[4] Petitioner was admitted to practice in Massachusetts in 1975 and apparently remains a member in good standing in the Commonwealth.

he testified Lenhoff had previously authorized as payment for attorney fees. Lenhoff denied giving permission to apply any portion of the distribution proceeds in this manner; petitioner could produce no documentation or other memorialization of such authorization.

About the same time, Lenhoff inquired why petitioner was not attending to her other legal matters. Petitioner explained he was purchasing a house and was preoccupied with billing clients to raise funds for the down payment. According to Lenhoff, he said he needed between $5,000 and $15,000; and she indicated her willingness to lend him the money so he would have time to devote to her litigation. Petitioner initially declined; but about May 16, 1985, he asked whether the offer was still open. Lenhoff provided him a blank check for up to $15,000, which was to be repaid in a few days with 15 percent interest. Petitioner ultimately made the check for $25,000 and withdrew an additional $8,500 from the trust account, claiming he had Lenhoff's authorization for a loan up to $40,000. She denied giving permission either to draw the loan check in excess of $15,000 or to make a withdrawal from the trust account, since she was then unaware petitioner had received the distribution proceeds.

According to petitioner, he thought he suggested Lenhoff seek independent counsel prior to the loan; however, she could not recall being so advised. Petitioner did not obtain her written consent or otherwise document the transaction. When he advised her the next day of the amount for which the check had been drawn, he also informed her for the first time that he had received the corporate distribution funds. However, he did not disclose the total but only that he had taken $8,500 as an additional loan. Lenhoff testified that upon learning petitioner had borrowed a total of $33,500, she was "stunned" and could only ask when he intended to repay her. He said she would get her money within 60 days and offered to secure the loan with his house, which she declined because of insufficient equity.

Petitioner failed to repay any part of the loan within the time promised. Lenhoff sent him a demand letter in September 1985 and filed a complaint with the State Bar in October. In December, he gave her a check for $17,331, which at that time he apparently considered reimbursement for the distribution check received in April. In February 1986, he paid an additional $19,977. By this time, it appears petitioner considered both checks as repayment on the loan with 15 percent interest from May 1985. Thus, the $8,665 originally disbursed to himself as attorney fees remains outstanding.

In mitigation, petitioner offered the testimony of several medical professionals that he suffers from a manic-depressive illness (atypical bipolar disorder), which was not properly diagnosed until November 1985 when he

began treatment with lithium to stabilize his moods. Prior to that time, he had experienced recurring depression for several years but did not have his first manic episode until March or April 1985. He then began to indulge in extravagant spending, arranged to purchase a house he ultimately could not afford, and worked with tremendous energy, albeit without sustaining sufficient income to cover his expenses. Sometime in June 1985, he returned to a depressed state, became withdrawn, and failed to maintain his work habits.

After treatment with lithium, petitioner no longer experienced mood swings. He managed to repay his substantial debts without filing for bankruptcy and to return to his former level of work. He married another lawyer with whom he later became associated in practice.[5] She testified she was familiar with his medical and professional history through personal experience and was aware of and sensitive to indications of possible changes in mood. Since he began taking medication, she had not detected any potential problems and would insist he seek further medical help if she did.

The medical professionals who described petitioner's mental condition stated that manic-depressive illness can cause an individual to have impaired judgment and possibly be unable to distinguish between right and wrong. However, they also indicated a person in such a state of mind could commit a dishonest act. None of the witnesses offered any opinion regarding petitioner's mental state at the time of the misconduct, except to verify that he was experiencing a manic episode.

Several attorneys appeared on petitioner's behalf as character witnesses. Each had worked with him, either on cases or in some form of association, and was aware of the charges of misconduct. They all attested to their confidence in his professional competence, honesty, and integrity.

The hearing panel found that petitioner "did not deposit all his client's funds in his Client Trust Account, he used said funds without the client's knowledge or consent, he did not promptly and properly advise the client of the receipt of said funds or the amount thereof, he borrowed from the client without taking the precautions needed to protect the client under such circumstances, and he did not keep his promise to the client in repayment of the sums taken and borrowed." On this basis, petitioner was found to have transgressed section 6103 (violation of his oath and duties as an attorney) and rules 5-101, 8-101(A), 8-101(B)(1), and 8-101(B)(4). The hearing panel recommended a stayed four-year suspension, with four years' probation on

---

[5] At oral argument, petitioner's counsel informed the court petitioner is now practicing as a sole practitioner.

various conditions including an actual suspension of ninety days. Both petitioner and the State Bar requested review.

The review department substantially adopted the hearing panel's factual findings. (But see, *post*, fn. 12.) However, it rejected the conclusion of law as to section 6103, concluding instead that petitioner's misappropriation of the corporate distribution proceeds constituted an act of moral turpitude in violation of section 6106. By a vote of eleven to three, it also recommended a five-year stayed suspension and seven years' probation on various conditions including one year's actual suspension, restitution to Lenhoff of $8,665 with 10 percent interest from May 15, 1985, and a limitation on practicing as a sole practitioner.[6] Petitioner sought review in this court.

## II. Discussion

### A. *Sufficiency of the Evidence*

■ Petitioner contends the record does not support the review department's determinations that he failed to notify Lenhoff when he received the corporate distribution check or to inform her of the amount, and that he misappropriated virtually the entire proceeds by disbursing one-half as attorney fees and withdrawing the remainder as a loan to himself without the client's authorization. ■ "Although this court independently reviews the evidence, the State Bar Court's findings are viewed with 'great deference, particularly when based on evaluations of credibility.' [Citations.] The hearing panel is best suited to resolving credibility questions, because it alone is able to observe the witnesses' demeanor and evaluate their veracity firsthand. [Citation.] Against this backdrop, the petitioner must demonstrate that the findings are not sustained by convincing proof and to a reasonable certainty. [Citation.] Merely repeating conflicts in the evidence does not satisfy this burden. [Citation.]" (*Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 655-656 [247 Cal.Rptr. 608, 754 P.2d 1104].)

■ Petitioner fails to identify any deficiency in the evidence. Both the hearing panel and the review department expressly determined that Lenhoff had not given permission to apply one-half the distribution check to his fees; that petitioner did not tell her of its receipt until approximately three weeks later; and that he did not then inform her of the total amount, indicating only that he had borrowed $8,500 of the proceeds as a loan. These determinations impliedly resolved all conflicting testimony against him.[7]

---

[6]One dissenting member would have recommended two years' actual suspension; two would have recommended not less than two years' actual suspension.

[7]Petitioner contends the hearing panel resolved the conflicting testimony in his favor and the review department erroneously rejected its conclusions as to the relative veracity of the

Petitioner's inability to produce any memorialization or other documentation of proper authorization is convincing circumstantial evidence buttressing this conclusion. Moreover, Lenhoff had paid approximately $18,000 in legal fees through April 1, 1985; petitioner's fee statement of July 30, 1985, simply reflects that it was "for legal services rendered through June 30, 1985," without further specification of any work done in April.[8] In other words, petitioner failed to substantiate that Lenhoff owed him any fees, much less in excess of $8,600, as of May 1, 1985. Finally, on December 6, 1985, petitioner repaid the full amount of the distribution check originally received in April. While he now contends he was actually making payment on the loan, the coincidence of the amount suggests he recognized at that point the impropriety of originally diverting one-half of the proceeds for his own purposes.[9]

The totality of the foregoing circumstances represents clear and convincing proof petitioner violated section 6106 by withholding and withdrawing funds from a client trust account without authority to do so. (See generally *Kelly* v. *State Bar, supra,* 45 Cal.3d at p. 656; *Murray* v. *State Bar* (1985) 40 Cal.3d 575 [220 Cal.Rptr. 677, 709 P.2d 480]; *Allen* v. *State Bar* (1977) 20 Cal.3d 172, 177 [141 Cal.Rptr. 808, 570 P.2d 1226]; *Jackson* v. *State Bar* (1975) 15 Cal.3d 372 [124 Cal.Rptr. 185, 540 P.2d 25]; *Mrakich* v. *State Bar* (1973) 8 Cal.3d 896, 905 [106 Cal.Rptr. 497, 506 P.2d 633].) "There is no

---

witnesses. To the contrary, although the hearing panel did not expressly state that Lenhoff's testimony was more credible, it impliedly did so in sustaining the allegations as to rules 5-101, 8-101(A), 8-101(B)(1), and 8-101(B)(4). The hearing panel also made specific factual findings that petitioner did not inform Lenhoff he received the distribution check until May 17 and "did not tell her the amount thereof" and that he took $8,500 of the balance of the funds as a loan "[w]ithout [her] knowledge or consent."

This record thus differs significantly from the one before us in *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1], on which petitioner relies. In that case, we stated, "If the hearing panel or officer is unable to assess the relative credibility of the witnesses whose testimony conflicts, the doubt should be resolved in favor of the attorney since the burden in the disciplinary hearing is on the State Bar to establish by clear and convincing evidence that discipline is warranted. [Citation.] When the hearing panel and review department report only that the testimony is conflicting, this court is presented with a record of insoluble ambiguity. We cannot ascertain whether the State Bar cannot resolve, or if it simply has not resolved, the credibility question." (*Id.,* at p. 968, fn. 2.)

Although the hearing panel did not determine the relative believability of petitioner and Lenhoff as a specific finding of fact, its other express findings and conclusions of law unambiguously imply it resolved all such questions against petitioner. The review department's findings are also consistent with that determination. Moreover, at oral argument petitioner conceded through counsel that he was "essentially not believed."

[8] This statement and a subsequent one in August also do not reflect a credit of the $8,665 disbursement on the amount owing.

[9] Petitioner now maintains that the $17,331 check was partial repayment of the $33,500 loan and that he properly retains the initial disbursement to himself as attorney fees. To the extent we uphold the review department's determination that petitioner misappropriated the amount taken as fees, we concomitantly sustain its finding that he still owes Lenhoff $8,665.

doubt that the wilful misappropriation of a client's funds involves moral turpitude. [Citations.]" (*Bate* v. *State Bar* (1983) 34 Cal.3d 920, 923 [196 Cal.Rptr. 209, 671 P.2d 360]; *In re Freiburghouse* (1959) 52 Cal.2d 514, 516 [342 P.2d 1].)

In response, petitioner asserts he was acting on the "reasonable and good faith belief" Lenhoff had approved the manner in which he disbursed the distribution check, and his actions reflect "merely a misunderstanding" as to the scope of his authority. ■ However, "[a]n attorney's misconduct need not be in bad faith to be willful; rather, all that is required is 'a general purpose or willingness to commit the act or permit the omission.' [Citation.]" (*Edwards* v. *State Bar* (1990) 52 Cal.3d 28, 37 [276 Cal.Rptr. 153, 801 P.2d 396].) "This court has explained that '[w]hile "good faith of an attorney is a matter to be considered in determining whether discipline should be imposed for acts done through ignorance or mistake" [citation], the lack of an evil intent does not immunize the attorney's conduct from a finding of moral turpitude.' [Citation.]" (*Murray* v. *State Bar, supra,* 40 Cal.3d at p. 582; see also *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 458 [224 Cal.Rptr. 101, 714 P.2d 1239].)

In this regard, we have also long "stressed that 'as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the attorney.'" (*Murray* v. *State Bar, supra,* 40 Cal.3d at p. 582, quoting *Peck* v. *State Bar* (1932) 217 Cal. 47, 51 [17 P.2d 112].) ■ While here petitioner may not have acted with venal design, his failure to verify and document the client's purported authorization or even to inform her of the receipt and amount of the distribution check had the same perfidious effect: the client was unwittingly, hence unwillingly, deprived of rightful and timely access to her funds.[10] (See also *Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 475 [169 Cal.Rptr. 581, 619 P.2d 1005] ["Gross carelessness and negligence constitute violations of the oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability, and involve moral turpitude as they breach the fiduciary relationship owed to clients. [Citation.]"].)

Petitioner challenges as well the finding that he exceeded Lenhoff's authorization in drafting her check for $25,000 rather than a maximum of

---

[10] As he did in the proceedings below, petitioner stresses that Lenhoff did not object when he later informed her he had used the distribution funds for attorney fees and a loan to himself. We find no basis in the record for drawing any favorable inference from this fact. Lenhoff specifically denied giving permission for petitioner to apply any part of the distribution check to his own use, and petitioner's own testimony was the only evidence supporting his claim of authorization. Moreover, the client's ratification of petitioner's misfeasance would not serve to absolve him of or insulate him from its disciplinary ramifications.

$15,000. Despite petitioner's claims, Lenhoff denied giving greater authority and testified she was "stunned" to learn of the actual amount. Again, both the hearing panel and the review department impliedly resolved the conflicting testimony against petitioner; the record fully supports those determinations. More to the point, petitioner's acknowledged deficiencies in failing to conduct the transaction in accordance with the procedures set forth in rule 5-101 leave him in a poor position to rebut the reasonable inference that he took advantage of his client's willingness literally to give him a blank check.

### B. *Appropriate Discipline*

Petitioner also contends the review department's recommended discipline is "erroneous and excessive" in imposing as conditions of his seven years' probation a one-year period of actual suspension, restitution to Lenhoff of $8,665 plus interest, and a requirement that he continue to practice only while associated with other attorneys. He claims that since his misconduct resulted from an undiagnosed mental illness, which is now controlled by medication, actual suspension is unnecessary to satisfy the goals of attorney discipline. In opposing restitution, he continues to assert that Lenhoff still owes him at least that amount for services rendered. In his petition, he also argues that an association with a single other attorney is sufficient to protect against any lapse in his mental health that might adversely affect his clients. At oral argument, however, he contended any such restriction is unnecessary. Except as noted below, we find the review department's recommendations appropriate under the circumstances.

"Misappropriation of client funds has long been viewed as a particularly serious ethical violation. [Citations.] It breaches the high duty of loyalty owed to the client, violates basic notions of honesty, and endangers public confidence in the profession. [Citations.] Although there is no 'fixed' disciplinary formula [citation], misappropriation generally warrants disbarment unless 'clearly extenuating circumstances' are present. [Citation.]" (*Kelly* v. *State Bar, supra,* 45 Cal.3d at p. 656; see *Edwards* v. *State Bar, supra,* 52 Cal.3d at p. 37.)

Standard 2.2(a) of the Standards for Attorney Sanctions for Professional Misconduct (former Rules Proc. of State Bar, div. V (eff. Jan. 1, 1986); all further references to Standards are to these provisions) specifically provides, "Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed. In

those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances."[11]

■ "The standards and the recommendation of the review department are entitled to great weight. [Citation.] When, as here, the review department's recommendation is consistent with the standards, we generally will not reject the recommendation unless we entertain grave doubts about its propriety. [Citations.] The attorney bears the burden of demonstrating that the recommendation is erroneous or unlawful. [Citation and footnote omitted.]" (*Grim* v. *State Bar* (1991) 53 Cal.3d 21, 30 [278 Cal.Rptr. 682, 805 P.2d 941].)

■ For several reasons, we find petitioner's challenge to a one-year actual suspension unpersuasive. First, the amount of the misappropriation was substantial: $8,665 originally taken as attorney fees plus $8,500 taken as part of the excess loan. (See, e.g., *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1368 [240 Cal.Rptr. 848, 743 P.2d 908] [$1,355 not insignificant].) Second, as to the $8,500, petitioner failed to make timely repayment and ultimately discharged that obligation only after Lenhoff had sent him a letter demanding that he do so and had filed a complaint with the State Bar. (See, e.g., *Weller* v. *State Bar* (1989) 49 Cal.3d 670, 676 [262 Cal.Rptr. 549, 779 P.2d 293]; *Lawhorn* v. *State Bar, supra*, 43 Cal.3d at pp. 1366-1367; cf. *Edmondson* v. *State Bar* (1981) 29 Cal.3d 339, 344 [172 Cal.Rptr. 899, 625 P.2d 812] [restitution " 'entitled to no weight as a mitigating circumstance' " when made after filing of State Bar charges].) As to the $8,665, petitioner has yet to make reimbursement notwithstanding the total lack of evidentiary support for his claim of authorization and the findings of both the hearing panel and the review department that he had no such authority.[12] This failure suggests both a distressing lack of appreciation of the

---

[11] The review department did not cite to the Standards in recommending a one-year actual suspension, possibly because petitioner's misconduct occurred prior to their effective date. However, we have previously authorized retroactive application (see *In re Ford* (1988) 44 Cal.3d 810, 816, fn. 6 [244 Cal.Rptr. 476, 749 P.2d 1331]; *Guzzetta* v. *State Bar, supra*, 43 Cal.3d at p. 968), and petitioner does not argue otherwise.

[12] The review department did not adopt the hearing panel's conclusion that Lenhoff owed petitioner in excess of $8,665 for services rendered and, hence, was not due any restitution. On review, petitioner echoes the hearing panel's rationale in opposing this probationary condition. His objections reflect a misapprehension of the nature and function of the proceedings below. (See *Giovanazzi* v. *State Bar, supra*, 28 Cal.3d at p. 475 ["Matters asserted in mitigation establishing that the amount of the [client's] claim was unresolved, cannot excuse the misappropriation of any part of funds held to satisfy the claim when resolved."].)

The purpose of the hearing was to determine whether petitioner improperly disbursed one-half of the corporate distribution check upon receipt. Petitioner attempted to justify his actions by establishing client authorization. Whether Lenhoff actually owed $8,665 in accrued fees was relevant only in so far as it may have been circumstantial evidence supporting petitioner's position. At the hearing, petitioner submitted statements for services rendered "through June 30, 1985," and "through August 31, 1985," totalling more than $20,000. Nei-

seriousness of his misconduct and an absence of remorse for a substantial violation of his fiduciary obligations in trust account matters.[13] (See, e.g., *In re Ford, supra,* 44 Cal.3d at pp. 816-817; *Jackson* v. *State Bar, supra,* 15 Cal.3d at p. 382.) ■ "It is well settled that an attorney may not unilaterally determine his own fee and withhold trust funds to satisfy it even though he may be entitled to reimbursement for his services. [Citations.]" (*Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350, fn. 5 [113 Cal.Rptr. 371, 521 P.2d 107]; see *Giovanazzi* v. *State Bar, supra,* 28 Cal.3d at p. 475; *Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 358 [90 Cal.Rptr. 600, 475 P.2d 872].) ■ Third, as he acknowledges, petitioner engaged in other acts of misconduct in violation of rule 5-101 when he acquired the loan from Lenhoff, regardless of the amount, without documentation or security and without advising her to seek outside counsel. (See Standards, std. 2.8; see also *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757-756 [183 Cal.Rptr. 861, 647 P.2d 137].)

Finally, while the circumstances in mitigation are sufficiently compelling to preserve petitioner from disbarment, they do not warrant a deviation from the minimum period of actual suspension prescribed by the Standards. Thus, although petitioner has no prior record of discipline in 10 years of practice (see *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82]), "[w]e have frequently stated that the misappropriation of funds entrusted to an attorney merits severe discipline, even in cases where the attorney has no prior disciplinary record. [Citation.]" (*Jackson* v. *State Bar, supra,* 15 Cal.3d at p. 383, fn. 14.) Petitioner's misconduct also appears an isolated and aberrational incident in his professional career, as his character references in part substantiated. (See *Friedman* v. *State Bar* (1990) 50 Cal.3d 235, 245 [266 Cal.Rptr. 632, 786 P.2d 359]; *Kelly* v. *State*

---

ther of these statements itemized services rendered prior to April 30, 1985, the date petitioner misappropriated Lenhoff's funds; the client vigorously disputed the amount of fees then accrued or still outstanding at the time of the hearing.

The disciplinary proceedings did not resolve the amount in controversy between attorney and client. The record contains no evidence substantiating the hearing panel's determination "that [petitioner] has not been paid for all his services"; the review department properly rejected this conclusion. Moreover, petitioner himself acknowledges in his reply brief that he "was paid nothing by Lenhoff for extensive legal services he performed for her following the loan transaction," a period during which the client disputes any work was done on her behalf. Under such circumstances, we decline to engage in fee dispute resolution in the context of reviewing a disciplinary action, particularly when the record does not afford any evidentiary basis for fairly and accurately doing so.

[13] In this regard, we also note petitioner's emphasis throughout these proceedings on Lenhoff's failure to object to his misconduct and her purported knowledge of matters, such as the amount of the distribution check, of which he had a fiduciary responsibility to inform her. An attorney cannot insulate his or her improprieties simply because the client may fortuitously have some understanding of his or her legal affairs. Regardless, the attorney must under all circumstances appropriately document that he or she has properly discharged the obligation to serve the client's interests faithfully and with full disclosure.

*Bar, supra,* 45 Cal.3d 649, 657.) Nevertheless, it constitutes a material and multiplicious breach of clear fiduciary responsibilities.

In rejecting disbarment, we give substantial consideration to petitioner's manic-depressive condition at the time of his improprieties, although we do not accord it the extenuating significance petitioner would ascribe. He may have been in a manic phase when he received the distribution check, retained one-half as fees, and withdrew the rest as a loan. Nevertheless, the evidence does not demonstrate any causal connection between his mental state and the misappropriations: although this phase of his illness was contemporaneous, it was not the impetus for his misconduct.[14] Indeed, petitioner continues to maintain he had authorization to disburse the funds in the manner he did and does not attribute his good faith belief to any effect of either phase of his disorder. (See *In re Billings* (1990) 50 Cal.3d 358, 367 [267 Cal.Rptr. 319, 787 P.2d 617]; cf. *Gary v. State Bar* (1988) 44 Cal.3d 820, 828 [244 Cal.Rptr. 482, 749 P.2d 1336] ["Petitioner acknowledges that his alcoholism per se does not mitigate the instant misconduct, since he was 'not drinking' at the time it occurred."].)

Nevertheless, we recognize that petitioner's then undiagnosed psychiatric difficulties apparently did give rise to his spending extravagances, which in turn prompted the need for funds at the time of his misfeasance. ██ "We give financial pressures greater weight in mitigation if they are extreme and result from circumstances that are not reasonably foreseeable or that are beyond the attorney's control." (*In re Naney* (1990) 51 Cal.3d 186, 196 [270 Cal.Rptr. 848, 793 P.2d 54].) ██ The uncontradicted evidence shows that petitioner was unaware of his true mental condition until November 1985 and that prior to that time the illness had an overwhelming and disorienting impact on his judgment and behavior. In late 1985, he began substantial efforts to ameliorate its effects on his life through medication and therapy, which appear to be succeeding. Petitioner also presented the considered testimony of several colleagues familiar with all the relevant circumstances of his case who attested to their continued high opinion of his competence and professional integrity.[15]

---

[14] As expressed by one of the dissenting members of the review department: "There is no dispute on the record that [petitioner] suffered from an undiagnosed manic-depressive condition at the time of his misconduct. At the same time, there is no evidence the manic condition impaired his understanding of right and wrong regarding handling of his trust account. [Petitioner] claims a good faith belief in his authority to the funds. The validity of that claimed belief is not dependent upon his illness. The hearing panel found there was no sufficient basis for the claim of that good faith belief and the record supports that conclusion. Therefore, while there may have been a nexus between [petitioner's] illness and the creation of his need for money, i.e., compulsive or delusional purchases, there is no nexus between his illness and taking approximately $8,500 [*sic*] in trust funds . . . ."

[15] We also credit petitioner's determination to resist filing for bankruptcy to discharge the substantial financial obligations incurred during the uncontrolled manic phase of his illness. While these obligations apparently did not arise from or relate to his law practice, his suc-

Under such circumstances, petitioner's mental disorder does not necessitate disbarment for the protection of the public or any other purpose related to attorney discipline. (See *In re Abbott* (1977) 19 Cal.3d 249, 254 [137 Cal.Rptr. 195, 561 P.2d 285] [prognosis for attorney's manic-depressive condition "not uniformly favorable"]; see also *In re Fahey* (1973) 8 Cal.3d 842, 850, fn. 4 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]; cf. *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 823 [263 Cal.Rptr. 798, 781 P.2d 1344].) On the other hand, given the seriousness of his misconduct, we remain unpersuaded its extenuating significance should prevail entirely and conclude a one-year actual suspension is fully supported by the record.

Moreover, notwithstanding petitioner's arguments to the contrary, "[a] sanction of one year's actual suspension and probation with conditions is not inconsistent with this court's holdings in similar cases of . . . misappropriation by an attorney with no disciplinary record. [Citations.]" (*Murray* v. *State Bar*, *supra*, 40 Cal.3d at pp. 584-585; see *Hipolito* v. *State Bar* (1989) 48 Cal.3d 621 [257 Cal.Rptr. 331, 770 P.2d 743] [$2,000 misappropriation due to "inexactitude and insolvency, not greed or venality"; one-year actual suspension]; *Boehme* v. *State Bar* (1988) 47 Cal.3d 448 [253 Cal.Rptr. 245, 763 P.2d 1335] [$2,495 misappropriation and twenty-two-year practice without prior discipline; eighteen-month actual suspension]; see also *Lawhorn* v. *State Bar*, *supra*, 43 Cal.3d 1357 [misappropriation of $1,355 because of fear attorney's wife would freeze trust account; two-year actual suspension].)

We likewise find no merit in petitioner's contention the restitution order is erroneous. (See, *ante*, fn. 12.) Both the hearing panel and the review department concluded petitioner did not have his client's authorization to apply one-half the distribution check to attorney fees. That determination not only delimits the scope of the disciplinary proceedings but supports the restitution order as well. If any subsequent accounting for services rendered remains unsatisfied, that is a collateral matter for petitioner and Lenhoff to resolve in an appropriate civil forum.

We do agree with petitioner that it is unnecessary for him to associate with more than one other attorney during the probationary period to fulfill the purposes of attorney discipline, primarily protection of the public. Nothing in the record suggests a further measure of supervision or control is warranted in light of the uncontradicted evidence petitioner's illness has been stabilized on medication and he continues to receive therapy. Nevertheless, we conclude, in light of his history and the nature of his affliction, that the protection of the public compels he be restricted from practicing as

cessful effort to repay his creditors in full tends to corroborate the high opinions of his character witnesses and reflects positively on his personal integrity.

a sole practitioner while on probation. Accordingly, that condition shall be modified to reflect that petitioner must at all times during the period of probation be associated with at least one other attorney.

## III. DISPOSITION

Accordingly, we order that petitioner Terrance R. McKnight be suspended from the practice of law for five years but that execution of the suspension order be stayed and that, except as modified herein, he be placed on probation for seven years on all the conditions of probation adopted by the review department at its December 29, 1989, meeting including actual suspension for the first year and restitution as specified. Petitioner shall also pass the Professional Responsibility Examination within one year after the effective date of this order and comply with the provisions of rules 955(a) and (c), California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)